Mary Frances **ALCOTT**, Sally Banks, Mary Lee Alcott, Richard Alcott, and Love Alcott Poole, Plaintiffs/Appellees,

v.

**UNION PLANTERS NATIONAL BANK,** Trustee, Defendant/Appellant.

Court of Appeals of Tennessee, Western Section at Jackson.

Aug. 3, 1984.

Application for Permission to Appeal Denied by Supreme Court Feb. 25, 1985.

F. Mark Vorder Bruegge, Jr., of Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, for defendant/appellant.

Terry C. Cox and James M. Manire, Memphis, for plaintiffs/appellees.

TOMLIN, Judge.

The trustee of an inter vivos trust, Union Planters National Bank (hereinafter "bank"), has appealed from an order of the Chancery Court of Shelby County granting a summary judgment motion filed by the plaintiffs in this cause to compel the termination of the trust. The issue presented to us by this appeal is whether or not the courts of this state can terminate an inter vivos trust, without any factual hearing, upon the application of the settlors and remaindermen in being at the time the termination is sought when there are interests of unascertained contingent remaindermen not before the court. For the reasons stated hereafter, we hold that not only can such a termination not be done by summary judgment, but that under the law, it cannot be done at all. Accordingly, we

reverse the action of the chancellor and dismiss the complaint.

Inasmuch as this does come to us by way of summary judgment, we treat the pleadings in a factual way. In July of 1957, two of the plaintiffs, Mary Frances Alcott and Sally Banks (hereafter referred to as "settlors") by a trust agreement created an inter vivos trust, naming the bank as trustee. The corpus consisted of the settlors' undivided one-half interest in farm property located in Crittenden County, Arkansas. Under the terms of the trust agreement, each of the settlors retained a life interest in one-half of the income from the farm property, with a fee simple remainder interest going to the children then living at the time of the deaths of the respective settlors or to the issue of any deceased child. The agreement also provided that should one of the settlors die leaving no children or issue of a deceased child, then in that event the deceased settlor's share should merge with the issue of the surviving settlor. We will more closely examine the terms of the trust instrument in more detail later in this opinion.

The complaint stated that settlor Alcott was the mother of the plaintiffs Mary Lee Alcott, Richard Alcott, and Love Alcott Poole. There is no allegation that these three children of settlor Alcott are *sui juris*, but since it is not contested, it is presumed that they are. At the time of the filing of the complaint, settlor Alcott was alleged to be 58 years of age and "incapable of bearing children." The other settlor, Sally Banks, is alleged to have never had children during her lifetime, and is stated to be 55 years of age, and "incapable of bearing children."

As grounds for termination of the trust the plaintiffs alleged that "the trustee has been minimally involved in management . . . ." and "the trustee has been insensitive to settlors' and settlor's childrens' reasonable requests for information, suggestions relating to operation of the farm land, access to property, and the like." The plaintiffs also contended that termination was desirable as "the use of the trustee in the handling of settlors' property is an unnecessary burden and expense to them, and plaintiffs would be able to better manage, operate and enjoy this property if it were free of trust."

The conveyance in trust by the settlors was expressly made irrevocable, with the settlors relinquishing all rights to modify the agreement. The sections of the trust agreement pertinent to this lawsuit read as follows:

THIS CONVEYANCE IS MADE IN TRUST, HOWEVER, and is made for the uses, interests, and purposes of this trust, to-wit:

1. (a) To hold, manage, rent and control, and to pay the income at times fixed by the trustees, but at least as often as annually, and, if practicable, in regular quarterly installments, in equal amounts, to the settlors, for and during the term of their natural lives, with remainders as hereinafter set forth. For accounting purposes the income to be so distributed shall be divided into two equal parts and one of such equal parts shall be paid by the trustees as aforesaid to the said SALLY D. BANKS, for and during the term of her natural life, and at her death one-half of the then remaining corpus of the entire estate hereunder conveyed, and the income for the period between the last income distribution date and the date of said SALLY D. BANKS' death, shall be distributed, free of the trust, to her then living children, and the living issue of any deceased child, per stirpes, but if, at the time of the distribution of the corpus, any of her children is less than twenty-one years of age, his or her share, shall be held by the aforesaid Trustees until he or she reaches majority, and the income from such share used for his or her benefit during minority.

(b) The remaining equal part of such income shall be paid by the Trustees as aforesaid to the said MARY FRANCES BANKS ALCOTT, for and during the term of her natural life, and at her death one-half of the then remaining corpus of the entire estate hereunder conveyed,

and the income for the period between the last income distribution date and the date of said MARY FRANCES BANKS ALCOTT'S death, shall be distributed, free of the trust, to her then living children, and the living issue of any deceased child, per stirpes, but if, at the time of distribution of the corpus, any of her children is less than twenty-one years of age, his or her share shall be held by the aforesaid Trustees until he or she reaches majority, and the income from such share used for his or her benefit during minority.

(c) Should either of said settlors leave no children or descendants surviving, then such share shall go to her sister and the Trustees shall continue with it until the termination of the trust herein created for such survivor and her children or descendants. If both of said Settlors should die, neither of them leaving children or descendants surviving, then upon the death of the survivor, the property remaining in the trust shall be distributed to the heirs at law of the Settlors according to the applicable laws of descent and distribution and the trust shall terminate.

Stated more simply, a one-half interest in both corpus and income was established for each settlor. The income was to be paid to each settlor during her lifetime. The appellant's brief capsulates the above "legalese" in more readable fashion:

At the time of each settlor's death, (I) any and each child of that settlor who is then alive, and (II) any and each then-living child or further issue of any settlor's child who had died before settlor, are to receive the subject property (per stirpes) (with the portion of a settlor's child younger than twenty-one to continue in trust status until that birthday). If none of the above-defined persons are alive at settlor's death, that settlor's half of the total trust would "pour over" into the other, identical distribution. And if no defined distributees were alive at all, then settlors' heirs became the remaindermen.

In its answer, the bank admitted all the factual allegations concerning the creation of the trust, the identity of the settlors, the identity and family relationship of the three plaintiffs who are the children of settlor Alcott, the absence of children of settlor Banks, and the ages of the settlors. It also admitted that the copy of the trust agreement attached to the complaint was a valid one. Also in its answer, the bank denied that it had improperly or insensitively administered the trust, and admitted that it opposed the termination of the trust. It affirmatively averred that the trust "creates beneficial interests in unborn children and issue of the named plaintiffs who are not parties to this action, who are not adequately represented in the action except by your defendant trustee, and who claim an interest relating to the subject matter of the action and are so situated that the disposition of the action in their absence may as a practical matter impair or impede their ability to protect that interest ...." In conclusion, the bank asked the court to appoint a guardian *ad litem* to represent the interests of such children and issue, and unless such an appointment be made, that the complaint should be either stayed or dismissed.

Subsequently, the plaintiffs filed a motion for partial summary judgment in their favor on the issue of termination of the trust by revocation by consent and agreement. Two affidavits were filed in support of this motion, both by doctors. One stated that he had examined settlor Banks and that with reasonable medical certainty she was physically incapable of bearing children. The other stated that he had performed a hysterectomy on settlor Alcott, and that within the realms of reasonable medical certainty she was physically incapable of bearing children. There were no countervailing affidavits. Prior to the disposition of the motion, the chancellor did not appoint any guardian *ad litem* to represent any unborn or otherwise unascertained beneficiaries, and without stating any grounds therefor, he granted summary judgment terminating the trust.

In its brief filed in this Court, the bank seeks a reversal of the trial court's order granting summary judgment and a remand of this case to the trial court for the appointment of a guardian *ad litem* to protect the interests of the unborn children that they contend to be contingent remaindermen. However, after a review of the law applicable to the central issue—that being the voluntary termination of this trust—we are of the opinion that a remand would simply prolong the agony of this litigation. In its answer, the bank also asked for a dismissal of the complaint should the chancellor fail to appoint a guardian *ad litem.* No such appointment was made. Furthermore, we are of the opinion that we may *sua sponte* order summary judgment when we find that the pleadings present no disputes as to material facts and we deem that the law compels it. This is the procedure we are following here.

Starting with the premise that none of the facts above outlined are contested, it is our responsibility to determine the law applicable to this case. The law relative to the central issue before us in our state is sparse. We can find but one case that sheds any light at all upon it. That case is *Hunter v. Barger,* 6 Tenn. App. 559 (1926). However, two factual differences in *Hunter* distinguish it from the case under consideration, so that its materiality is somewhat diluted. First of all, the trust is a testamentary one, not an inter vivos one. Secondly, inasmuch as the testator (settlor) was deceased, he obviously did not and could not consent to the termination of the trust.

In *Hunter* the complainant was the only living child of the testator. The defendants, in addition to the trustee, were all the children of the complainant. They were all of age, and were the only living beneficiaries under the will. The will left property in trust for the complainant for life and to her children at her death. Should any of them have predeceased her, then their respective interests would have passed to their issue, if any. The answer filed by the children consented to the prayer of the bill, which in

essence sought to vest a life estate in the complainant and to vest the fee simple remainder in themselves in equal interests.

In reversing the decree of the chancellor, the Court of Appeals adopted the assignment of error and the reasons therefor as set forth in the appellant's brief. However, prior to so doing, the court stated:

It will thus be seen that if the estate is terminated now, and this property turned over to what possibly may be the only beneficiaries, it may be lost or destroyed to such other possible beneficiaries. To prevent this, and to make effective the direction of the will, the trust was created. It is an active. continuing trust, and cannot be terminated by agreement of the parties, or by any decree of the court, thus substituting their will for the will of the testator.

6 Tenn. App. at 566.

Then tracking the language in the appellant's brief, the court added:

There are two modes in which a trust may be terminated. 1—When the event happens upon which it is to cease. In the pending case, the time has not expired during which the trust is to exist. 2—When all the beneficiaries are in existence and sui juris, and hold vested interests, and all consent and agree, a court of equity may decree its termination. In the pending case, all the beneficiaries are not in existence; all are not sui juris; none of them hold a vested interest, and all have not consented, and all cannot consent; and the decree is erroneous.

*Id.* at 567.

The research conducted by this Court does not indicate that *Hunter* has been modified or overruled in any way since its publication.

In addition to the case law as developed in several other states, our position is clearly supported by respected authorities who have written extensively on this subject, as well as the Restatement (Second) of Trusts. Bogert, Trusts and Trustees, § 1005 (rev. 2d ed. 1983) states:

*Termination at Request of Settlor and All Beneficiaries.*

If the settlor and all the beneficiaries request the court to terminate the trust, and the beneficiaries are competent, the court will decree termination, even though the purpose which the settlor had in establishing the trust has not been accomplished. He has abandoned his original objectives and taken a new attitude toward the disposition of the property. His donees who constitute *all the persons having any beneficial interest* in the trust property consent to this change.

. . . .

Termination will not be decreed, however, where settlor and only part of the beneficiaries request it. (Emphasis supplied).

Professor Scott writes extensively on the subject of termination and modification. In his highly respected treatise is stated:

The settlor cannot revoke the trust, if he has not reserved a power of revocation, unless all of the beneficiaries consent.... A nonconsenting beneficiary cannot be deprived of his interest under the trust, *whether the interest is vested or contingent* whether the beneficiary is ascertained or not, whether he is under a disability or not.

. . . .

If some of the beneficiaries ... are not ascertained, or are unborn, the settlor cannot revoke the trust although the other beneficiaries consent. (Emphasis supplied).

IV A. Scott, The Law on Trusts, § 340 (2d ed. 1956). Professor Scott then goes on to unequivocally state, *"[A] trust cannot be revoked by the settlor even with the consent of all the beneficiaries who are in being if there are other beneficiaries not yet in being, who therefore cannot possibly consent."* (Emphasis supplied). *Id.* at 2702.

While Scott modifies this somewhat strict view by stating on page 2709 that where some of the beneficiaries are under legal incapacity, such as being unborn or infancy, a court may appoint a guardian to represent them and thus approve on their behalf a termination or modification of the trust, he immediately points out that the English courts have taken a stricter view, stating that the court has no jurisdiction on behalf of the beneficiaries who are under an incapacity, or who are unborn, to consent to a termination or modification. *Id.* at 2710.

The *Restatement (Second) of Trusts* § 340(1), reads in part as follows:

§ 340.   *Where Some of the Beneficiaries Do Not Consent*

(1) ... [I]f one or more of the beneficiaries of a trust do not consent to its termination or are under an incapacity, the others cannot compel the termination of the trust, except in accordance with the terms of the trust.

Comment "d" to this section and its illustration speaks more clearly to the issue *sub judice:*

d.   *Where some beneficiaries not ascertained.* The rule stated in Subsection (1) is applicable where one or more of the beneficiaries are unascertained, although all of the other beneficiaries have full capacity and consent to the termination of the trust.

. . . .

*Illustration:*

4.   A transfers Blackacre to B in trust for C for life, and if C should die leaving issue, remainder to such issue, and if C should die without issue, remainder to D. C and D cannot compel the termination of the trust in whole or in part.

Other authorities are also in accord with our holding.

Where born and unborn children of a living person were entitled in an estate or interest in a trust fund, it has been held that the possibility of issue in such living person precluded the termination of the trust by the consent of all the living beneficiaries of the fund.

76 Am.Jur.2d, *Trusts*, § 72, p. 322 (1975).

The same authority then goes on to state that: "A court of equity will not defeat the

right of remaindermen, contingent beneficiearies, or of any interest that has not vested, by sanctioning the termination of a trust." *Id.* at § 80, p. 330.

The better reasoned cases from other jurisdictions in this country are in step with the authorities that we have cited above. In *A.B. v. Wilmington Trust Co.*, 41 Del.Ch. 191, 191 A.2d 98 (1963), the wife, as settlor, created an inter vivos trust that provided that income should be paid to her for life, and in the event of her death without any children, the trustees should pay the net income to her husband for life. At the husband's death and on default of the wife's exercising a testamentary power of appointment, the trust instrument stated that payment should be made in trust to her nieces and nephews and their heirs, executors and assigns per stirpes. The settlor-wife brought suit seeking to terminate the trust. Her husband and all her nieces and nephews consented to the termination.

The plaintiff and her three sisters had gone through menopause and arguably were incapable of bearing children. The plaintiff's brother was 65 years of age and separated from his wife.

In affirming the action of the trial court in granting summary judgment for the trustee, the court said:

But we do not reach this question [of the possibility of issue of plaintiff and her brothers and sisters]. Indeed, on the question of whether or not the abolition of the common law conclusive presumption as to the possibility of issue is a matter for judicial or legislative action, the Court is divided. However, we shall assume, without deciding, that as to plaintiff and her sisters possibility of issue is extinct, and that the interest of each of the nephews and nieces is a vested remainder, subject to be divested by the exercise of the power of appointment, but not by the birth of additional members of the class. Even on this assumption, we are of the opinion that the remainder is also subject to be divested by the death of any nephew or niece

before the time of distribution leaving issue surviving. Such issue, we think, has a contingent interest in the corpus of the trust. There is, therefore, an interest in respect of which consent to termination cannot be obtained.

191 A.2d at 101.

The court in *Wilmington* further held that the consent of the nieces and nephews was not effective to bar or eliminate the contingent interest in the trust corpus of their issue.

The case of *Wachovia Bank And Trust Co., N.A. v. Sevier*, 41 N.C.App. 762, 255 S.E.2d 636 (Ct. 1979), shows the futility of remanding this case for the purposes of appointing a guardian *ad litem* for the unborn and unascertained descendants. In that case, the trustee filed a declaratory judgment action seeking court approval to terminate the trust, as requested by the settlor. The trustee voiced no objection to the termination of the trust. The trust instrument provided that the settlor retain the right to have the income paid to her for her lifetime. She also retained a general power of appointment by will over the corpus. In the event this power was not exercised by her the instrument directed that the corpus was to be distributed to her issue per stirpes, and in the event she left no issue surviving her, then to her father's issue per stirpes. Under the terms of the agreement the trust was made irrevocable.

While all of the settlor's children who were of age filed answers approving the termination, the guardian *ad litem* appointed for the minor grandchildren and any unborn descendants of the settlor opposed the revocation of the trust on the grounds that the minor grandchildren and unborn lineal descendants of the settlor had a contingent future interest in the corpus and could not consent to the revocation of the trust.

In reversing the trial court's judgment authorizing the termination of the trust, the North Carolina court stated:

Effective consent may be given by a beneficiary in being, competent, and possessing an indefeasibly vested interest in

the trust estate. [Cites omitted] In this case, effective consent to the termination of the trust may not be given at this time by the settlor's children and grandchildren because none possess an indefeasibly vested interest in the trust estate. In addition, the settlor's minor grandchildren are legally incapable of giving consent, and issue not yet in being may acquire a vested interest upon the settlor's death.

255 S.E.2d at 639.

The appellees rely strongly on the case of *Randall v. Randall*, 60 F. Supp. 308 (S.D.Fla. 1944). We do not consider the *Randall* case reliable authority for several reasons. First of all, it is a decision of a trial court in the federal system. Secondly, the court therein relies in some measure on the case of *Thatcher v. Empire Trust Co.*, 243 App. Div. 430, 277 N.Y.Supp. 874 (1935). The *Thatcher* case has been discounted by other jurisdictions because of a statute in New York State which materially affects the common law rule. Lastly, we feel that *Randall* is simply out of step with the majority of the text writers and cases in this country.

For the reasons stated herein, the decree of the chancellor is reversed. The plaintiffs' suit is dismissed, with costs to be taxed to the plaintiffs, for which execution may issue, if necessary.

CRAWFORD, J., and WEST, Special Judge, concur.