**George NICKAS, Plaintiff/Appellee,**

v.

**Peggy Nickas CAPADALIS and Charles C. Nickas, Trustees, for Emma C. Nickas Trust, Defendants/Appellees,**

**Charles C. Nickas, Defendant/Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

March 18, 1997.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 8, 1997.

James T. Bland, Jr., Memphis, for Appellant.

Jerre G. Duzane, Apperson, Crump, Duzane & Maxwell, PLC, Memphis, for Defendant/Appellee, Peggy Nickas Capadalis.

George Skouteris, Michael Skouteris, Memphis, for Plaintiff/Appellee.

HIGHERS, Judge.

Defendant Charles C. Nickas (Trustee), co-trustee for the Emma C. Nickas Trust (Trust), appeals the trial court's final decree terminating the Trust and distributing the Trust assets to certain Trust beneficiaries. We reverse the final decree in part because

we conclude that the trial court improperly terminated the Trust without having all of the necessary parties before the court.

The parties' mother, Emma C. Nickas (Settlor), created the Trust in 1963 as an irrevocable trust for the use and benefit of the Settlor, the Settlor's daughter, Defendant/Appellee Peggy Nickas Capadalis (Capadalis), and the Settlor's grandchildren, Timothy Capadalis, Alexandra Capadalis, and Emily Maria Capadalis (collectively, the Capadalis children). The Trust Agreement, which designated the Trustee and Capadalis as co-trustees, provided that, during the period of her natural life, the Settlor would receive $100 per month from the Trust's net income. Under the terms of the Trust, the co-trustees were required to pay the remaining net income to Capadalis and the Capadalis children "for their comfortable maintenance, support, health and education."[1] The Trust Agreement further provided that, once the last of the Capadalis children attained the age of twenty-two years, the remaining net income would be distributed equally to the Settlor's four children, Capadalis, Zoe Nickas Galis (not a party to this proceeding), the Trustee, and Plaintiff/Appellee George C. Nickas (Plaintiff). In the event of the death of any of the Settlor's children, the co-trustees were required to allocate a portion of the Trust corpus for the creation of a new trust in the name of the deceased child. Income from the new trust was to be used for the maintenance, support, health, and education of the child's issue (the Settlor's grandchildren) until the last of such issue attained the age of twenty-one years. Thereafter, the new trust would terminate and the remaining corpus would be distributed to the child's issue (or to the issue of the child's issue if the child's issue were deceased at the termination of the new trust). If no issue survived, then the corpus of the new trust would revert to the Trust. By its terms, the Trust itself would terminate in the event that all of the Settlor's children died without leaving any surviving issue or, alternatively, in the event that all of the Settlor's children died and all of their surviving issue (the Settlor's grandchildren) had reached the age of twenty-one years.

In November 1992, Plaintiff George C. Nickas filed a petition for an accounting, removal of the co-trustees, dissolution of the Trust, and money damages. The Plaintiff's petition named only co-trustees Capadalis and the Trustee as parties to the proceeding. In support of his petition, the Plaintiff asserted (1) that the Plaintiff was a beneficiary of the Trust; (2) that the Plaintiff never had received any income from the Trust; (3) that the Plaintiff never had received an accounting of any Trust monies; (4) that the co-trustees had breached their fiduciary duties with regard to accountings and distribution of Trust monies; (5) that certain parcels of property belonging to the Trust had been sold and that the Plaintiff had received no monies from the sales; and (6) that the Trust should be dissolved, "as the purpose and intent of said Trust has ended."

In September 1993, the trial court referred the case to a master for the purpose of taking and stating "an accounting of all receipts and expenditures of [the Trust] since April 4, 1976."[2] After conducting a hearing, the master issued a report finding that, as of December 31, 1993, the Trust account should have contained $209,514.43 but instead contained only $99,731.35. The master concluded that the $109,783.08 "would appear to represent unauthorized expenditures by [the co-trustees]." Specifically, the master questioned the expenditure of Trust funds (1) to provide support for the Settlor in excess of the $1,200 per year authorized by the Trust Agreement; (2) to purchase a home which was placed in the names of the Settlor and Capadalis and which, upon the Settlor's death, became the sole property of Capadalis; and (3) to pay for the Settlor's funeral expenses.

---

**1.** The Trust Agreement stated that the Settlor's primary purpose in creating the Trust was the support of the Capadalis children. In the event the Trust income was inadequate to support Capadalis or the Capadalis children, the Trust Agreement authorized the co-trustees to invade the corpus of the Trust.

**2.** April 4, 1976, was the date that the youngest Capadalis child reached twenty-two years of age.

At the hearing, the Trustee claimed that the Trust owed him $71,241.77 for loans made by the Trustee to the Trust in the 1970's. In his report, the master stated that he could not determine the validity and accuracy of this figure, and he declined to make any findings regarding "whether the statute of limitations bars these loans or what other legal defenses may be available." The master concluded his report by recommending that the trial court distribute $89,269.98 in accrued income among the Plaintiff, the Trustee, and Zoe Nickas Galis. Because Trust funds had been used to purchase the home now owned by Capadalis, the master recommended that Capadalis not be permitted to participate in the distribution of the remaining income.[3]

Although the Trustee appeared and participated in the hearing before the master, the Trustee permitted a default judgment to be entered against him in May 1995 based upon his failure to file an answer. The Trustee, who was not represented by counsel during the proceedings below, never moved to set aside the default judgment in the trial court; however, the Trustee subsequently filed a *pro se* answer in which he asserted, *inter alia,* (1) that, under the terms of the Trust Agreement, only the net income from the Trust, and not the corpus, could be distributed to the Settlor's four children; (2) that only the Settlor's grandchildren were entitled to any distribution from the Trust corpus; (3) that dissolution of the Trust would deprive the Settlor's grandchildren of their right to share in the corpus; and, finally, (4) that the Plaintiff and his attorney should be responsible for all expenses associated with the proceeding. The Trustee also asserted in his answer that the Trust still owed him payments relative to $17,500 in loans made to the Trust in 1974 for "fire loss." According to the Trustee's answer,

> The loan was to begin January 6, 1975 and end July 6, 1982 with a total of 91 payments. At the end of this loan, the second loan begins for $10,000.00 [also] at the rate of 7%. This second loan begins August 6,

1982 and ends May 6, 1986 with a total of 46 payments.

> . . . .

> . . . [T]he Trust could not pay [the Trustee] $250.00 per month so . . . [the Trustee] agreed not to foreclose, but would be paid at a later date when the property was sold. In 1980, a few more payments at $250.00 were paid, but due to other problems, the Trust could not pay anything more. [The Trustee] did not foreclose, but extended the [loan] made [to the Trust]. . . .

> As of May 2, 1995, these loans have not been paid, . . . .

The Plaintiff responded by filing a "Plea of Statute of Limitations and Answer" in which he asserted that the Trustee's claim relative to any loans made to the Trust was barred by the applicable statute of limitations.

In August 1995, after conducting a hearing at which all four of the Settlor's children were present,[4] the trial court entered its final decree adopting the findings and recommendations of the master. According to the trial court's final decree, at the hearing the Settlor's children, with the exception of the Trustee, announced that they had reached an agreement relative to dissolution of the Trust and, further, that their respective children were "all adults and [were] willing to waive their respective residual rights of benefit to their respective parents." Based on the announced agreement, the trial court decided to terminate the Trust. In support of its decision, the trial court made the following findings:

> [F]rom all the evidence, and from the statement in open court of [the Trustee], that the primary purpose of the trust was for the benefit of [the Settlor], the mother of the children, Emma C. Nickas; that she died on June 8, 1989; that since that time, the burden of executing the trust has been upon [Capadalis] since her brother, [the Trustee], lived in Jacksonville, Florida, although from time to time she consulted

---

3. We note that the master's report did not recommend termination of the Trust but merely recommended distribution of the Trust's accrued income.

4. A transcript of this hearing was not included in the record on appeal.

with him; that although there appeared to be irregularities from the accounting, which have been resolved; notwithstanding the plain language of the trust, that $100.00 a month would be paid over to [the Settlor], nevertheless, the intent as expressed by [the Trustee] in his statement to the court, was for the support of [the Settlor], and the assets were used for that purpose; that the purpose of the trust has been fulfilled; that the trust should be terminated or the assets will be wasted; that all of the assets have now been reduced to cash with the only exception being the real property located at Pontotoc and Main Streets in Memphis, Tennessee; that the real property is in bad condition and the estate cannot afford to rehabilitate it; that in accordance with the statement of the attorney of [Capadalis], all of the cash assets should be paid out, the expenses being first paid; and that the trust remain in effect only until the real estate at Pontotoc and Main Streets be disposed of and the proceeds thereof be divided equally among the four children of [the Settlor]; that the plea of the statute of limitations by [the Plaintiff] and claimed by [the Trustee] is well taken, and the claim of [the Trustee] for reimbursement for any loan that he may have made to the trust many years ago, is barred.

In accordance with the agreement of the three children, the trial court distributed to Capadalis the sum of $5,000. Of the remaining Trust balance, the trial court distributed one-third each to the Plaintiff, the Trustee, and Zoe Nickas Galis, after the payment of taxes, debts, costs, and attorney's fees. Finally, the trial court awarded attorney's fees to counsel for the Plaintiff and counsel for Capadalis.

On appeal from the trial court's final decree terminating the Trust, the Trustee contends that the trial court erred in three respects: (1) in dissolving the Trust when some of the Trust beneficiaries were not parties to the proceeding and/or did not agree to the premature termination of the

Trust; (2) in ruling on the Trustee's claims against the Trust for loans made to the Trust; and (3) in awarding attorney's fees to counsel for the Plaintiff and counsel for Capadalis. We conclude that a resolution of the Trustee's first issue requires us to reverse in part the final decree.

As an initial matter, we are troubled by the Trustee's efforts to appeal the underlying, substantive issues in this lawsuit after permitting a default judgment to be entered against him earlier in the proceeding. As previously noted, the Trustee allowed a default judgment to be entered against him in May 1995 based upon his failure to file an answer. The Trustee, who was not represented by counsel until this appeal, never moved to set aside the default judgment in the lower court. Instead, the Trustee elected to appeal the trial court's final decree to this court.

By permitting a default judgment to be entered against him, a defendant "impliedly confesses all of the material allegations of fact contained in [the] complaint, except the amount of the plaintiff's unliquidated damages." *Patterson v. Rockwell Int'l,* 665 S.W.2d 96, 101 (Tenn.1984). As a general rule, therefore, the defendant against whom a default judgment has been entered is thereafter precluded from litigating any substantive issues in the lawsuit, except for the establishment of the amount of damages. *Witter v. Nesbit,* 878 S.W.2d 116, 119 (Tenn. App.1993), *cert. denied,* 513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994). In accordance with this principle, appellate review of a default judgment or decree is "quite limited." 5 C.J.S. *Appeal & Error* § 718 (1993).

Nevertheless, appellate courts may review default judgments for fundamental error, *i.e.,* error "apparent on the face of the record and going to the very foundation of the action." 5 C.J.S. *Appeal & Error* § 718 (1993). Thus, on appeal from a default judgment or decree, an appellate court may consider the issue of subject matter jurisdiction,[5] as well as "the sufficiency of the bill or the

---

5. See Commodity Futures Trading Comm'n v. American Commodity Group Corp., *753 F.2d 862, 866 (11th Cir.1984) (indicating that court would not review underlying merits of dispute*

*upon which default had been entered pursuant to Fed.R.Civ.P. 55, unless defaulting party was challenging district court's subject matter jurisdiction).*

complaint to sustain the decree of judgment." 5 C.J.S. *Appeal & Error* § 718 (1993); *accord Edington v. Michigan Mut. Life Ins. Co.*, 134 Tenn. 188, 183 S.W. 728, 729 (1915) (stating that, on appeal from default judgment, appellate court reviews sufficiency of complaint by same standard by which court considers motion to dismiss).

In this case, the Plaintiff's petition for an accounting and dissolution of the Trust is insufficient to sustain the trial court's final decree terminating the Trust because the petition fails to name the necessary parties to a termination of trust proceeding.[6] "Persons beneficially interested in a trust are necessary parties to a suit to terminate the trust." 89 C.J.S. *Trusts* § 93e (1955); *accord Florida Nat'l Bank & Trust Co. v. Blake*, 155 So.2d 798, 800 (Fla.Dist.Ct.App.1963) (holding that termination of irrevocable trust was improper because all beneficiaries were not parties to proceedings); *First Nat'l Bank v. Kerness*, 142 So.2d 777, 780 (Fla.Dist.Ct.App. 1962) (indicating that court must decline to dissolve or terminate irrevocable trust when all persons beneficially interested in trust are not before court). In this regard, the Plaintiff's petition fails to name as parties one of the present beneficiaries of the Trust, Zoë Nickas Galis, who, like the Settlor's other children, has a current vested interest in the Trust income. The petition also fails to name the Capadalis children[7] and the rest of the Settlor's grandchildren, all of whom have a contingent interest in both the income and the corpus of the Trust.

As a corollary matter, we note that the trial court's early termination of the Trust was improper because fewer than all of the Trust beneficiaries consented to the Trust's termination. Tennessee courts recognize two situations in which a trust may be terminated: (1) when the event happens upon which the trust is to cease;[8] and (2) when all of the trust beneficiaries "are in existence and sui juris, and hold vested interests, and all consent and agree." *Hunter v. Barger*, 6 Tenn.App. 559, 567 (1926); *accord Alcott v. Union Planters Nat'l Bank*, 686 S.W.2d 79, 82 (Tenn.App.1984); *see also* Restatement (Second) of Trusts § 340(1) (1959) (stating that, with limited exceptions, "if one or more of the beneficiaries of a trust do not consent to its termination or are under an incapacity, the others cannot compel the termination of the trust, except in accordance with the terms of the trust"). Here, some of the Trust beneficiaries did not consent to the Trust's termination because they were not made parties to the termination proceeding. Further, although the Trustee did not file his answer objecting to termination of the Trust until after permitting a default judgment to be entered against him, the Trustee did appear earlier in the lawsuit and orally object to the Trust's termination.

Additionally, we question whether termination of the Trust is proper at this time because, even if the existing beneficia-

---

6. At common law, "the nonjoinder of necessary parties to an action [could] be taken advantage of only by plea in abatement or answer, unless it appear[ed] on the face of the complaint, in which case it [might] be taken advantage of by demurrer or motion in arrest of judgment." *Brady v. Correll*, 20 Tenn.App. 224, 97 S.W.2d 448, 451 (1936). In discussing the effect of the failure to join necessary parties, one authority has explained that "the general rule requiring all parties in interest to be made parties to the action, is, in most cases, not a right of the parties brought before the Court, but rather a rule prescribed by Courts of Equity for their own government, a rule founded in their anxiety to do justice among all parties having an interest in the subject matter, or in the object of the action, and thereby to prevent future controversy and litigation." Henry R. Gibson, *Gibson's Suits in Chancery* § 68, at 67–68 (William H. Inman ed., 7th ed. 1988).

7. Inasmuch as all of the Capadalis children have reached the age of twenty-two years, their interest in the Trust is now contingent upon surviving their mother, Peggy Nickas Capadalis.

8. On appeal, the Appellees contend that the trial court's termination of the Trust was proper because the Trust's purpose has been accomplished. *This argument is without merit* because, until the occurrence of the event upon which the Trust is to cease, the Trust cannot be terminated without the consent of all of the Trust beneficiaries. *Alcott*, 686 S.W.2d at 82; *Hunter*, 6 Tenn.App. at 567. By its terms, the Trust in this case will not cease until all of the Settlor's children have died and all of the Settlor's grandchildren have reached the age of twenty-one.

ries consent to the Trust's termination, the record suggests that there may be unborn or unascertained contingent beneficiaries who are not represented in this proceeding and, thus, who cannot consent to the Trust's termination. This court previously has held that termination of a trust, except in accordance with the trust's express terms, is precluded where the interests of unborn or unascertained contingent beneficiaries are not before the court. *Alcott v. Union Planters Nat'l Bank,* 686 S.W.2d 79 (Tenn.App.1984).[9]

In light of our resolution of the foregoing issue, we also reverse the awards of attorney's fees made in this case. In an action involving a trust, the award of attorney's fees from the trust corpus is permitted "only when the services of such attorneys inure to the benefit of the entire estate as distinguished from services rendered to benefit one or more of the individuals interested in the trust." *Marshall v. First Nat'l Bank,* 622 S.W.2d 558, 560 (Tenn.App.1981) (citing *Pierce v. Tharp,* 224 Tenn. 328, 455 S.W.2d 145 (1970), *cert. denied,* 402 U.S. 929, 91 S.Ct. 1527, 28 L.Ed.2d 863 (1971)). For example, attorney's fees may be awarded to the successful petitioner in an action against a trustee for breach of trust. *Marshall,* 622 S.W.2d at 560 (citing *Hail v. Nashville Trust Co.,* 31 Tenn.App. 39, 212 S.W.2d 51 (1948)). Unless some benefit is contributed to the preservation of the trust estate, however, an award of attorney's fees is not permitted from the trust fund, "notwithstanding the rule that a trust estate should bear the expense of the administration of the trust." *Marshall,* 622 S.W.2d at 560.

Based on the record before this court, we are not convinced that the awards of attorney's fees were proper in this case. The record suggests that, instead of contributing to the preservation of the Trust estate, the Plaintiff's action sought to terminate the Trust prematurely and to distribute its corpus to beneficiaries, including himself, who, under the terms of the Trust, were not entitled to the Trust corpus but were entitled only to Trust income. The record further indicates that the Plaintiff's action against the co-trustees for breach of fiduciary duty was not successful. Regarding the award of attorney's fees to Capadalis's counsel, at least some of counsel's efforts appeared to be directed, not at preserving the Trust estate, but at reaching a settlement agreement to effect an early termination of the Trust. In this regard, counsel's actions also appeared designed to benefit Capadalis individually rather than to benefit the Trust.[10] Accordingly, we reverse the awards of attorney's fees and remand for the trial court's reconsideration of this issue in light of the foregoing principles and in light of the trial court's disposition of the case on remand.

We affirm, however, the trial court's ruling on the statute of limitations defense raised by the Plaintiff relative to the Trustee's claim for reimbursement for loans made to the Trust. The Trustee contends that the trial court erred in ruling on the statute of limitations issue because the Trustee's claim for loans made to the Trust was not properly before the court. In support of this contention, the Trustee argues that he did not file a cross-claim relative to the loans, *see* T.R.C.P. 13.07, and that no evidence was presented

---

**9.** Tennessee courts recognize the doctrine of virtual representation, under which parties with a present interest in property may represent the interests of unborn or unascertained contingent remaindermen, provided that their interests in the property are sufficiently similar. *Ridley v. Halliday,* 106 Tenn. 607, 61 S.W. 1025 (1901). Generally, this doctrine is applicable to trust proceedings in Tennessee. *See Quinn v. First Nat'l Bank,* 168 Tenn. 30, 73 S.W.2d 692 (1934) (suit seeking distribution of trust income); *Hail v. Nashville Trust Co.,* 31 Tenn.App. 39, 212 S.W.2d 51 (1948) (suit against trustee for breaches of trust); *Nashville Trust Co. v. Cain–Sloan Co.,* 29 Tenn.App. 39, 193 S.W.2d 103 (1946) (suit seeking court approval of lease of trust

property); *see also Jones v. Duke,* 1991 WL 83326 (Tenn.App.1991) (suit seeking court approval of proposed agreement for sale of real estate comprising trust). In *Alcott,* however, this court refused to apply the doctrine of virtual representation in a proceeding to compel the early termination of a trust. *Alcott,* 686 S.W.2d at 83–85 (citing 76 Am.Jur.2d *Trusts* § 72 (1975), and Restatement (Second) of Trusts § 340(1) (1959)).

**10.** In light of their adversarial positions throughout much of this lawsuit, we also question how both the Plaintiff and Capadalis could be entitled to an award of attorney's fees from Trust funds.

below upon which the trial court could have based its ruling.

Although the Trustee did not file a cross-claim relative to the loans, the Trustee did allege in his *pro se* answer that he was entitled to reimbursement for the loans. As previously indicated, the Trustee filed his answer after the default judgment was entered against him based upon his failure to file an answer. Procedurally, therefore, the Trustee's answer could not effectively address or raise any issues in the lawsuit beyond the issue of the amount of damages. *Witter v. Nesbit,* 878 S.W.2d 116, 119 (Tenn. App.1993), *cert. denied,* 513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994).

Nevertheless, "when issues not raised by the pleadings are tried by the express or implied consent of the parties, those issues will be treated in all respects as if they had been raised in the pleadings." *Chisholm v. Bohannon,* 558 S.W.2d 446, 448 (Tenn.App.1977). In this case, the Trustee raised the issue of reimbursement for the loans in the hearing before the master, as well as in his subsequently-filed answer in the trial court. The Trustee again may have raised this issue at the hearing before the trial court just prior to entry of the court's final decree. Without a transcript of this hearing, however, we are unable to determine what evidence, if any, was presented at the hearing or whether the Trustee agreed that this issue would be decided at the hearing.

The appellant has the duty "to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal." *State v. Boling,* 840 S.W.2d 944, 951 (Tenn.Crim.App. 1992) (citing T.R.A.P. 24(b)). The only record before this court suggests that the issue of the Trustee's claim for reimbursement for loans made to the Trust was tried below with either the express or implied consent of the Trustee. Accordingly, we reject the Trustee's contention that this claim was not properly before the trial court.

The portions of the trial court's final decree terminating the Trust and awarding at-

torney's fees are reversed and this cause remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellees, for which execution may issue if necessary.

CRAWFORD, P.J., W.S., and HEWITT P. TOMLIN, Jr., Senior Judge, concur.