FILED

05/26/2020

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 15, 2020 Session

**SHERRIE MILLER DALY v. JOHN DALY**

**Appeal from the Circuit Court for Shelby County**
**No. CT-005438-06        Mary L. Wagner, Judge**

_____

**No. W2017-02549-COA-R3-CV**
_____

This post-divorce appeal is the fourth appeal between the parties. This action involves the court's holding of the mother in criminal contempt for her repeated failure to adhere to the orders of the court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and ARNOLD B. GOLDIN, J., joined.

Lori R. Holyfield, Memphis, Tennessee, for the appellant, Sherrie Miller Daly.

Vickie Hardy Jones, Memphis, Tennessee, for the appellee, John Daly.

**OPINION**

**I.        BACKGROUND**

Sherrie Miller Daly ("Mother") and John Daly ("Father") married in 2001. One child was born of the marriage. The Parties were divorced by order of the court in February 2010. Pursuant to a marital dissolution agreement ("MDA"), Mother was designated as the primary residential parent. Father, a professional golfer, was given flexible co-parenting time in accordance with his travel schedule. The relationship between the parties deteriorated and became contentious, at best.

Since then, the Parties have engaged in extensive litigation concerning Mother's refusal to adhere to the court's orders, resulting in three prior appeals. In the first appeal,

this court upheld the trial court's modification of the primary residential parent designation from Mother to Father and findings of contempt against Mother. *S.A.M.D. v. J.P.D.*, No. W2011-01256-COA-R3-CV, 2012 WL 5266194, at *1 (Tenn. Ct. App. Oct. 25, 2012) ("Daly I"). The findings of contempt related to Mother's refusal to adhere to the parenting plan and continued harassment of Father. Notably, the court first held Mother in contempt and imposed a 50-day sentence, which it suspended provided she adhered to the future orders of the court. When Mother again violated the court's orders, the court lifted the suspension and ordered her to serve three days in jail. We affirmed.

During the pendency of *Daly I*, Mother sought designation as the primary residential parent and filed her own petitions for contempt. Father responded with additional petitions for contempt, concerning, inter alia, Mother's failure to ensure the Child's completion of schoolwork while in her care, her continued harassment of him, and failure to pay attorney fees as ordered. As pertinent to this appeal, the trial court denied Mother's petitions and held her in contempt for her "continued and perpetual" disregard of the court's orders. By order, dated June 4, 2012, the court lifted the balance of her previously suspended sentence and ordered her to serve the remaining 47 days in jail. The court further found Mother guilty of an additional 75 counts of criminal contempt but elected to sentence her for only 37 of the 75 counts. The court imposed a sentence of 10 days of each count in addition to the previously imposed 47 days, for a total of 417 days. The court ordered Mother to first serve 30 days in jail, followed by the service of 52 days over the course of 26 consecutive weekends. The court suspended the balance of her sentence, namely 335 days, pending her compliance with future orders. We upheld the court's finding of criminal contempt and the sentence imposed. *S.A.M.D. v. J.P.D.*, No. W2013-00314-COA-R3-CV, 2013 WL 5447392, at *30 (Tenn. Ct. App. Sept. 30, 2013) ("Daly II").[1]

In April 2014, Father filed a petition for breach of contract, alleging that Mother had failed to pay the mortgage, homeowner's insurance, and property taxes on the residence previously occupied by her and the Child ("the Windgarden Residence"). He explained that his obligation for the residence ceased once the Windgarden Residence was no longer the Child's primary residence, thereby requiring Mother to remit payment for the property pursuant to the provisions of the MDA. By order, dated May 21, 2014, the court directed Mother to vacate the Windgarden Residence and quitclaim the property to Father to offset the judgment for Father's payment of expenses related to the Windgarden Residence and his award of attorney fees in prior proceedings. The court

---

[1] *Daly II* was designated as not for citation. Accordingly, this opinion will only be cited as applicable to matters concerning this appeal involving the same parties. *See* Tenn. R. S. Ct. R. 4(E)(2) ("An opinion so designated shall not be published in any official reporter nor cited by any judge in any trial or appellate court decision, or by any litigant in any brief, or other material presented to any court, except when the opinion is the basis for a claim of res judicata, collateral estoppel, law of the case, or to establish a split of authority, or when the opinion is relevant to a criminal, post-conviction or habeas corpus action involving the same defendant.").

further provided as follows:

> The Court orders [Mother] to vacate the Windgarden Residence by May 27, 2014. [Mother] shall maintain the Windgarden Residence in good and undamaged condition through the date that she vacates the Residence. She shall not disturb or deface the property. She may remove only her personal property. She shall not remove faucets, fixtures, appliances or anything physically connected to the property. There shall be no destruction to the property.

We affirmed the court's order and remanded for enforcement of the judgment. *S. A. M. D. v. J. P. D.*, No. W2014-01015-COA-R3-CV, 2015 WL 3863234, at *8 (Tenn. Ct. App. June 23, 2015) ("Daly III").

Meanwhile, Father filed a petition for criminal contempt on December 11, 2012, and amended and supplemental petitions on November 7, 2014, and October 28, 2015. Father also sought to suspend Mother's co-parenting time. All issues related to criminal contempt were bifurcated from all other issues pending before the court at that time. The case proceeded to a hearing on the criminal contempt allegations in December 2017. Mother was represented by counsel. She chose not to testify but was admonished during the proceeding for violating the rule of sequestration by texting a witness in open court during the proceedings.[2]

The testimony and evidence presented outlined approximately 175 instances of Mother's failure to adhere to the permanent parenting plan and follow other orders of the court, allegations which primarily related to Mother's failure to ensure the Child completed his schooling while in her care and attended therapy appointments. Father also alleged that she failed to facilitate his communication with the Child; posted pictures of the Child on Facebook; harassed him on various occasions by text, email, and telephone; failed to vacate the Windgarden Residence as ordered; and vandalized the Windgarden Residence once she finally left. He claimed that Mother removed permanent fixtures and appliances, damaged fixtures, and generally failed to leave the residence in a good and undamaged condition. Mother responded with witnesses of her own, attesting to her alleged good faith attempts to comply with the court's orders.

The trial court rendered an oral ruling in which it painstakingly made findings as to each count alleged and also provided a supporting chart to its written order in which it again set forth each count and provided its findings. In sum, the court merged several counts and issued a conviction for 35 counts of criminal contempt. The court sentenced Mother to 10 days for each count, resulting in a total sentence of 350 days, which it

---

[2] The court held her in contempt for this violation and sentenced her to one day of incarceration. This count of contempt is not at issue in this appeal.

suspended, pending her compliance with future orders of the court. However, the court lifted the suspension of the sentence imposed on June 4, 2012, and upheld on appeal in *Daly II*. The court ordered her to serve a total of 336 days, consisting of the 335 days of the sentence previously suspended and the one day in connection with her direct criminal contempt that occurred during the present trial. The court directed Mother to serve the first 168 days consecutively and the rest served over the course of 84 consecutive weekends. This appeal followed.

## II. ISSUES

A. Whether the proceedings below were procedurally defective.

B. Whether the evidence was sufficient to support the court's findings of criminal contempt.

C. Whether the sentence imposed was excessive.

D. Whether Father is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

Our review is de novo upon the record of the trial court without any presumption of correctness attaching to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). We must, however, presume the trial court's factual findings to be correct absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

As stated in *Daly I*,

A finding of criminal contempt must be based on the following four elements: (1) the order that was allegedly violated must be lawful; (2) the order must be clear, specific, and unambiguous, (3) the order must actually be disobeyed or otherwise resisted; and (4) the violation of the order must be willful. A person accused of criminal contempt is presumed innocent, and the four elements must be proven beyond a reasonable doubt.

Once a guilty verdict is entered, the contemnor's presumption of innocence is removed and is replaced by a presumption of guilt. Therefore, when the sufficiency of the evidence to support a criminal contempt finding is challenged on appeal, the defendant bears the burden of demonstrating why the evidence is insufficient to support the guilty verdict. In conducting our

appellate review, the prosecution is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it. Additionally, questions regarding the credibility of witnesses, the weight and value of the evidence, and any factual issues raised by the evidence are resolved by the trier of fact.

2012 WL 5266194, at *11 (internal citations and quotations omitted).

## IV.    ANALYSIS

### A.

Criminal contempt actions have been explained by this court as follows:

Criminal contempt is either direct or indirect. Disruptive or disobedient acts committed in the court's presence constitute direct criminal contempt. Trial courts may impose summary punishment for these acts when there is a need to act swiftly and firmly to prevent contumacious conduct from disrupting a judicial proceeding. Contemptuous acts committed outside of the court's presence constitute indirect criminal contempt. Trial courts may impose punishment for indirect criminal contempt only after providing notice pursuant to Tenn. R. Crim. P. 42(b). Like all persons charged with contempt, persons facing an indirect criminal contempt charge are entitled to the presumption of innocence, the privilege against self-incrimination, and the requirement that their guilt be proven beyond a reasonable doubt.

*Jones v. Jones*, No. 01A01-9607-CV-00346, 1997 WL 80029, at *3 (Tenn. Ct. App. Feb. 26, 1997) (internal citations omitted). A ten-day sentence is the maximum period of incarceration allowed for one count of criminal contempt. *See* Tenn. Code Ann. § 29-9-103(b) ("Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days[.]").

Mother first argues that the record does not establish that the court provided proper notice of the charges and the proceeding pursuant to Rule 42(b) of the Tennessee Rules of Criminal Procedure, which provides as follows:

(b)    Disposition on Notice and Hearing. A criminal contempt shall be initiated on notice, except as provided in subdivision (a) of this rule.

(1)    Content of Notice. The criminal contempt notice shall:

- 5 -

(A)  state the time and place of the hearing;
(B)  allow the alleged contemner a reasonable
time to prepare a defense; and
(C)  state the essential facts constituting the
criminal contempt charged and describe it as
such.

(2)  Form of Notice.  The judge shall give the notice orally
in open court in the presence of the alleged contemner or by
written order, including an arrest order if warranted.  *The
notice and order may also issue on application of the district
attorney general, an attorney appointed by the court for that
purpose, or an attorney representing a party in the case.*

(Emphasis added.).

While the original petition, filed on December 11, 2012, is not in the record,[3] the first amended petition, filed on November 7, 2014, was included for this court's review. The amended petition listed each count of alleged criminal contempt and facts supporting the same and further provided as follows:

Mother is hereby notified that:

A.  This petition places Mother in jeopardy of being found in criminal contempt of this court's orders and punished by fine (of $50) or by imprisonment (not to exceed 10 days) for each count of which she is found guilty.
B.  That the hearing on this petition is set to be heard on February 16, 2015, at 9:00 a.m. before the Honorable Donna Fields[.]
C.  The essential facts constituting the criminal contempt charged are described in paragraph 1 above.
D.  You have the rights of a criminally accused person, including, but not necessarily limited to, the right to counsel, the presumption of innocence, and the right to remain silent.

Accordingly, we conclude that sufficient notice was provided by Father's counsel in accordance with Rule 42(b).

---

[3] The court found that sufficient notice was provided in the December 2012 petition.  We decline to hold otherwise when it is the appellant's burden to prepare a record that "'conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal.'"  *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997) (quoting *State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992)).

Mother next complains that an arraignment and reading of the charges was not provided prior to the hearing pursuant to Rule 10 of the Tennessee Rules of Criminal Procedure, which provides as follows:

(a) General. Before any person is tried for the commission of an offense, the person shall be called into open court and arraigned, except as provided in Rule 43.

(b) Procedure. The arraignment shall consist of the following:
(1) ensuring that the defendant has a copy of the indictment, presentment, or information before called upon to plead;
(2) reading the indictment, presentment, or information to the defendant or stating to the defendant the substance of the charge; and then
(3) asking the defendant to plead to the indictment, presentment, or information.

We must first note that "[c]ontempt proceedings are sui generis—neither a civil action nor a criminal prosecution as ordinarily understood, nor a criminal prosecution within the Sixth Amendment of the United States Constitution." *Bowdon v. Bowdon*, 278 S.W.2d 670, 672 (Tenn. 1955). The procedure is governed by Rule 42 of the Tennessee Rules of Criminal Procedure. No formal indictment, presentment, or information is required pursuant to Rule 42. Further, a court may even summarily hold a party in criminal contempt without formal notice. Tenn. R. Crim. P. R. 42(a) ("A judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt. The contempt order shall recite the facts, be signed by the judge, and entered in the record."). With these considerations in mind, we deny Mother's request for relief on this issue.

Mother next argues that she was not informed of her right to counsel at all stages of the proceeding or of her right against self-incrimination. The record belies this assertion as evidenced by the amended petitions for contempt, Mother's appointment of counsel for the contempt proceeding, and the court's repeated instruction that the matters of contempt were bifurcated from the civil matters as a result of her right to counsel. Mother also chose not to testify in the contempt proceeding, thereby establishing her knowledge of the right to refrain from questioning.

Lastly, Mother claims that the trial court issued rulings on some charges that were brought outside of the one-year statute of limitations applicable in such actions and that

her right to a speedy trial was also violated, as evidenced by the extensive delay in the proceedings from October 28, 2015, through July 27, 2017. Our review of the record confirms that these issues are without merit. The original petition, filed on December 11, 2012, was still pending when the amended and supplemental petition was filed on November 7, 2014. These allegations were then ultimately addressed in the final hearing in December 2017. While the proceeding was admittedly delayed, Mother requested several continuances and pursued other appeals of the trial court's orders during the pendency of the instant case. Further, she has not alleged any claim of prejudice as a result of any delay in the proceedings.

## B. & C.

Mother claims that the evidence presented was insufficient to support the court's finding of criminal contempt for all 35 counts alleged. She claims that her violation of the court's order was not willful and that the evidence presented did not establish that her actions were for the bad purpose of violating the court's order. Mother further argues that the sentence imposed was excessive and not justly deserved in relation to the seriousness of the offenses.

As was the case in *Daly I*, the court here did not impose a new sentence but merely lifted the suspension of a prior sentence based upon Mother's continued violation of the court's orders. We explained,

> Consequently, although the trial court made numerous findings of criminal contempt against Mother, she would have been subject to being required to serve the entire 50-day sentence for a single willful violation of a previous order. For this reason, in order to uphold the trial court's decision to lift the suspension on Mother's sentence, we need only find that the evidence in the appellate record supports a finding that Mother was in criminal contempt of any of the trial court's orders.

*Daly I*, 2012 WL 5266194, at *11 (internal citation omitted). Here, in this fourth appeal, Mother was subject to serve the balance of her previously imposed 335-day sentence for a single violation of the court's order. The suspended 335-day sentence was upheld on appeal. *Daly II*, 2013 WL 5447392, at *30. In upholding the sentence, we stated as follows:

> As correctly noted by Father in his brief, from the date of the parties divorce in February 2012 through January 2013, the trial court has conducted three separate hearings on Father's contempt petitions against Mother. In each of those hearings, the trial court determined that Mother had violated the court's orders. Mother has been given leniency in the form of suspended sentences, but she has not availed herself of the opportunity to

cure her contempt and to follow the orders of the court. Rather, as discussed in detail above, she has continued to violate the court's orders and has, in fact, committed additional acts of contempt while operating under the largess of the court's suspended sentence. We agree with the trial court's comment that it has exhausted its options other than jail to motivate Mother to comply with its orders. Given Mother's excessive and continual violations of the trial court's orders over the relevant period of less than two years, we cannot conclude that the trial court imposed an excessive sentence in this case, or that it otherwise abused its discretion.

*Daly II*, 2013 WL 5447392, at *19. We decline to recount the specific facts supporting each count alleged when this is now the third appeal as a result of Mother's failure to adhere to the court's orders involving the same behavior, namely refusal to ensure the Child completed his schooling while in her care and attended therapy appointments, failure to facilitate Father's communication with the Child, continued harassment of Father, and now vandalism of the Windgarden Residence. The record overwhelmingly establishes Mother's refusal to follow the court's orders in, at the very least, 35 instances. Accordingly, we affirm the court's findings of contempt on the new allegations, its imposition of the 350-day suspended sentence, and its lifting of the previously suspended 335-day sentence.

### D.

Father requests attorney fees on appeal. Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). Father maintains that an award of fees is appropriate pursuant to Tennessee Code Annotated section 36-5-103(c), the permanent parenting plan, and the MDA.

Tennessee Code Annotated section 36-5-103(c), revised on July 1, 2018, now provides for an award of attorney fees in contempt actions as follows:

A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Father is not entitled to an award of attorney fees on appeal pursuant Section 36-5-103(c) because the revised provisions of Section 36-5-103(c) do not apply to this action, initially filed in December 2012.

The court sustained several violations of the permanent parenting plan, mostly relating to Mother's failure to ensure the Child's completion of schoolwork and attendance at speech therapy while in her care. However, the court did not award attorney fees at trial for these violations. The original permanent parenting plan, entered on February 19, 2010, provides as follows:

> In the event that it should be determined, either by this Court or by any other court of competent jurisdiction, that either party has breached any provision of this Plan, then the breaching party shall pay to the other party all reasonable attorneys' fees and costs incurred in the enforcement of any such provision or provisions as such are adjudged by the Court upon full hearing.

The permanent parenting plan has undoubtedly been revised since that time as evidenced by the court's modification in which it designated Father as the primary residential parent. The revised permanent parenting plan is not included on the record on appeal and is not cited by Father in support of his request. Under these circumstances, we deny the request for attorney fees on appeal based upon the permanent parenting plan.

While direct violations of the MDA were alleged, the court did not find Mother in contempt for violating the MDA. The court found Mother in contempt for her violation of its order entered on May 21, 2014, directing Mother, inter alia, to maintain the Windgarden Residence and refrain from destruction of the property. At a separate hearing held on December 8, 2017, at which Mother appeared pro se, the court found that Father was entitled to a money judgment for the damages *and* attorney fees because Mother's damage to the property stemmed from her breach of the MDA with regard to the Windgarden Residence. The MDA provides as follows:

> In the event that it should be determined, either by this Court or by any other court of competent jurisdiction, that either party has willfully breached any provision of this Agreement, then the breaching party shall pay to the other party all reasonable attorneys' fees and costs incurred in the enforcement of any such provision or provisions as such are adjudged by the Court upon full hearing.

We hold that an award of attorney fees on appeal for Father's defense of the contempt action on appeal is too far removed from the intent of the MDA. With the above considerations in mind, we respectfully deny Father's request for attorney fees on appeal.

## V. CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Sherrie Miller Daly.

_____
JOHN W. MCCLARTY, JUDGE