IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 26, 2012 Session

**DAVID G. ROGERS, EX. REL. KAREN WRIGHT v.
AUTOZONE STORES, INC.**

**Appeal from the Circuit Court for Montgomery County
No. MCCCCVOD07976     Hon. Ross H. Hicks, Judge**

**No. M2011-02606-COA-R3-CV - Filed August 21, 2012**

This is a premises liability case in which Karen Wright alleged that she slipped in a puddle of water and fell on the floor while exiting an Autozone store. She filed suit against Autozone Stores, Inc., claiming negligence. Autozone Stores, Inc. filed a motion for summary judgment, asserting that Karen Wright could not prove that it caused the condition which led to her fall or that it had actual or constructive notice of the condition prior to her fall. Autozone Stores, Inc. also alleged that Karen Wright could not recover because she was 50 percent or more at fault for her injuries. Following a hearing, the trial court granted the motion for summary judgment and dismissed the case. Karen Wright appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J, and D. MICHAEL SWINEY, J., joined.

Aubrey T. Givens and John Jay Clark, Nashville, Tennessee, for the appellant, David G. Rogers, ex. rel. Karen Wright.[1]

Stephen B. Morton and Joseph C. Johnsen, Nashville, Tennessee, for the appellee, Autozone Stores, Inc.

---

[1] Karen Wright filed a petition for bankruptcy; therefore, the proper party of interest is the bankruptcy trustee, David G. Rogers.

# OPINION

## I. BACKGROUND

It was raining on November 28, 2006, when Karen Wright entered Autozone Stores, Inc. ("Autozone") through the designated entrance, obtained the items she needed, borrowed a funnel from the clerk, and left the store through the designated exit. After using the funnel, she inserted a paper towel into the funnel to clear it of excess oil. She then walked from her car to the store, entering the store through the designated exit.[2] After returning the funnel to the clerk, she turned around and proceeded to walk away from the counter to leave the store through the designated exit. As she was walking, she slipped in a puddle of water and fell, landing on her left knee.

Thereafter, Ms. Wright filed a complaint against Autozone, alleging negligence. Specifically, Ms. Wright claimed that Autozone was negligent by failing to maintain the premises and by failing to warn customers of the dangerous condition caused by the wet floor near the designated exit. Autozone denied liability, asserting that Ms. Wright was at least 50 percent at fault for the damages she sustained and that she could not prove that it breached any duty to her or that the "alleged actions or omissions" of its employees caused her injuries.

Autozone employees, Danny Austin and Claudette Rhoten, provided deposition testimony in August 2010. Mr. Austin testified that he was the store manager of Autozone when Ms. Wright visited the store in 2006. As store manager, he ensured that his store was maintained in a safe manner. He stated that employees at the store were advised to clean up any spills that they found and that while the floor was mopped whenever it needed to be mopped, there was not a set time for the employees to inspect the floor. He could not recall any other slip and fall incidents at his store prior to Ms. Wright's fall. He stated that he usually left warning signs near the front of the store because customers often approached the counter with items like brake fluid. He opined that in this case, the water was located in front of the counter on the white tile floor and that it was unlikely that the employee behind the counter could see the area in which Ms. Wright fell because of the height of the counter. He could not recall how many times that area had been checked for spills prior to the fall but claimed that he had likely looked over the area a few times prior to the fall. He related that he did not see Ms. Wright fall but that he approached her after she fell and talked with her briefly while filling out an incident report.

Ms. Rhoten testified that Autozone did not have a policy regarding the inspection of the floor but that she cleaned up any spills that she found. She could not recall a single

---

[2]At this point, she had used the designated entrance one time and the designated exit two times.

incident prior to Ms. Wright's fall. She stated that she was working at the register when Ms. Wright approached the counter and fell onto the tile floor three or four feet from the counter. She could not see Ms. Wright on the floor because of the height of the counter. After Ms. Wright fell, she inspected the floor and found a spot of water that was "maybe the size of a dime." She stated that she had not seen the spot prior to the fall and that she had to get down on her hands and knees to find the spot. She said that Ms. Wright also had to walk around a warning sign to approach the area of the fall. She stated that the sign was placed in that area because it had been raining outside.

Ms. Wright also provided deposition testimony in which she discussed the accident and her resulting injuries. She stated that she traveled to Autozone with her daughter, Shannon Palmore. She recalled that it was "raining really hard" when she arrived and that it was "raining steadily" when she got out of the car to go inside the store. She entered the store twice, once using the designated entrance and the second time using the designated exit. On her second trip into the store, she handed the funnel back to the clerk behind the counter and turned around to leave. As she was leaving, she slipped in the puddle of water and fell to the floor. She stated that the floor was made of concrete and that the floor did not have any grooves or cracks. She opined that the puddle of water was about as "wide as a plant pot" and stated that she believed that customers had likely tracked the water into the store. She stated that her pants "were soaking wet" from the water on the floor.

Ms. Wright recalled that as she was walking out of the store the second time, Ms. Palmore was walking into the store to purchase a drink. Ms. Wright testified that she fell approximately "two or three steps" away from the path that she used the first time to exit the store. She insisted that she did not see the water on the floor before she fell. She admitted that some warning signs were stacked in the corner of the store but insisted that the signs were not in the area near where she fell.

Several months later, Autozone filed a motion for summary judgment, contending that Ms. Wright would be "unable to meet her burden of proving that [it] was negligent or that said negligence caused [her] alleged injuries." Autozone claimed that Ms. Wright had not presented proof "as to how the floor became wet immediately prior to [her] fall or for what length of time the floor was wet immediately prior to [her] fall." Ms. Wright responded to the motion for summary judgment by asserting that Autozone knew or should have known of the dangerous condition when it had been steadily raining outside and a "nice size puddle" had formed on the floor. She alleged that the employees had been working there for such a length of time that they should have noticed the condition and cleaned it or warned patrons of the water on the floor. Attached to the response was an affidavit in which she stated, in pertinent part,

The area of the slippery substance was at least as wide as a flower pot.

There is no reason why [Autozone] would not or should not have seen the slippery substance that caused me to fall and in a sufficient amount of time for it to have been cleaned up before my fall.

The slippery substance could have been seen without lying on the ground.

[] I was not in a hurry, I was not rushing for any reason, I was not distracted by anything.

[] I was not wearing slick bottom shoes. I was wearing a pair of denim shoes that only had about a half-inch heel.

[T]he floor in which I was traveling [] was in a dangerous condition.

The slippery substance on the floor created a defective or inherently dangerous condition. I believe that the slippery substance that I had not seen caused me to slip and fall to the ground.

I was in pain subsequently and my daughter [] took me to [the] hospital.

The slippery substance on the floor could have been seen by the employees standing behind the counter or employees inspecting the floor.

There were no wet floor signs in the immediate area where I fell.

Following oral arguments, the trial court denied the motion, finding that Ms. Wright's deadline to disclose witnesses who could testify regarding Autozone's "requisite knowledge of the allegedly dangerous condition" had not expired.

Approximately three months later, Autozone filed a motion to renew its previously filed motion for summary judgment, contending that Ms. Wright had not produced any evidence of an issue of material fact regarding Autozone's knowledge of the allegedly dangerous condition. Ms. Wright opposed the motion and filed two affidavits in support of her opposition. In the first affidavit, Ms. Palmore attested that she was with Ms. Wright on the day of the fall. She stated, "During the time [Ms. Wright] was in the store, I saw a water puddle near the front counter where [she] fell. I also saw other puddles on the floor." She alleged that the employee at the counter should have seen the puddle prior to the accident because the puddle was in the direct line of sight of the counter at which the employee was

standing. She asserted that the puddle "was there at last the length of time from when [Ms. Wright] entered the store, went to the front counter and then proceeded out of the store." In the second affidavit, Ms. Wright attested, in part,

> I am aware that the puddle did not occur immediately before the accident and therefore, the employees could have and should have cleaned the area before the accident and should have tried to do so.
>
> The water puddle was in the direct line of sight of the employee behind the counter. The puddle was visible to the employee behind the counter and the other employees in the area.
>
> There was an employee behind the counter the entire time of when I entered the premises until the time I fell.
>
> The employee could have and should have witnessed the puddle as it was created in the direct line of sight of the employee.
>
> When the puddle was created, [Autozone's] employees could have and should have cleared it immediately. The puddle was there at least the length of time from when I entered the store, went to the front counter and then proceeded out of the store, which is enough time for the employee [] to have cleaned the spot or warned me of its existence.

Ms. Wright filed a second affidavit in which Ms. Palmore stated, in pertinent part,

> I did not see the puddle prior to my mother falling, but only after.
>
> At first, my mother went into [] Autozone and bought transmission fluid. She checked out at the front counter. She came outside and put it in the car. She returned inside to give the funnel back to the employee. She returned the funnel to the employee and turned to walk out. As she went to go out, she fell in a puddle.
>
> I had a clear view of the front area of the store during our entire visit and was paying attention. I was outside the store to begin with and then came inside. From the first time my mother entered [] Autozone until she fell was about 15 to 20 minutes. During that time period, no one else walked through the area where my mother fell. There was an employee of Autozone in the area of the front counter during this time period. My mother did not create the puddle that

caused her to fall. Therefore, by my calculation the puddle had to be there for at least 15 minutes.

Neither wet floor cones nor signs were out in the area that my mother fell.

Ms. Wright also submitted the deposition testimony of seven employees for the court's consideration. Only one employee, Donna Bush, spoke with Ms. Wright on the day of the accident. Ms. Bush testified that she approached Ms. Wright, who was sitting in a chair, and asked if Ms. Wright was hurt. She recalled that it had rained that morning and that the warning signs had been placed near the front of the store. She did not see any water in the area that Ms. Wright fell, and she did not remember anyone telling her that there was water in that area prior to the accident. She stated that the employees were responsible for cleaning the floor as needed and that they also placed the warning signs in any areas that were wet. Victor Gray, Gene Phillips, Paul Stittums, and Robert Toro all testified that they were told to clean the floor and place the warning signs out as needed. Tom Ward testified that he worked in a separate area of the store as the commercial manager. He related that he did not hear about Ms. Wright's accident or remember anything about the day that she fell.

The court dismissed the case, finding that Ms. Wright had not filed any additional evidence regarding Autozone's actual or constructive notice of the dangerous condition. The court stated that the subsequent affidavits were contradictory to Ms. Wright's deposition testimony and did not provide any "proof on how the floor became wet immediately prior to [her] fall or for what length of time it had been wet." The court found that Ms. Wright and Ms. Palmore were the only customers in the area where the puddle was located within the 15 to 20 minutes prior to the fall, that if the Autozone employees should have seen the spot, then she should have also seen the spot, and that "it was entirely possible, if not probable, that the wet spot occurred because of [her] entries and exits onto the premises." The court concluded that there were no genuine issues of material fact regarding Autozone's actual or constructive notice of the dangerous condition. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether the trial court erred in granting the motion for summary judgment in favor of Autozone.

B. Whether the trial court erred in granting Autozone's motion for summary judgment when Autozone failed to respond to Ms. Wright's statement of undisputed material facts.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment "must either (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). When the moving party has made a properly supported motion, the "burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5; *see Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV. DISCUSSION

### A.

#### 1.

Ms. Wright contends that the trial court erred in granting the motion for summary judgment because issues of material fact remained, namely whether Autozone had constructive notice of the dangerous condition on the floor. She notes that the floor was wet for a period of 15 to 20 minutes, that the store was relatively small, and that an employee was standing in the direct line of sight of the puddle. She asserts that the court improperly relied on the employees' testimony that there were warning signs by the puddle and the fact that she

could not identify the source of the puddle. Autozone responds that the trial court did not err in dismissing the case when no issues of material fact remained.

In premises liability cases, liability is imposed upon property owners due to their superior knowledge of the premises. *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). The theory behind this tort is that "the premises owner has a duty to exercise reasonable care under all circumstances to prevent injury to persons lawfully on the premises." *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999) (citing *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994)). The key to premises liability is foreseeability. *Dobson*, 23 S.W.3d at 331. For a plaintiff to prevail in a premises liability case, he or she must prove that "the injury was a reasonably foreseeable probability and that some action within the defendant's power more probably than not would have prevented the injury." *Id.*

A plaintiff seeking recovery under a premises liability theory must establish the elements of negligence. It is well settled in Tennessee that the elements of a negligence claim include:

> (1) a duty of care owed by the defendant to plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

*Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008). In addition to the elements of negligence, a plaintiff must also establish:

> (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner had actual or constructive notice that the condition existed prior to the accident.

*Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004) (citations omitted).

Ms. Wright's claim was based upon the theory that the employees had constructive notice of the dangerous condition. "Constructive notice" is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cause upon him the duty of inquiring into it." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997); *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994). A plaintiff can establish constructive notice in one of three ways. First, the plaintiff may demonstrate

that the owner or operator of the premises caused or created the condition. *See Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989). Second, if a third party caused or created the dangerous condition, the plaintiff may prove constructive notice by evidence that the condition "existed for a length of time" that the owner/occupier "in the exercise of reasonable care, should have become aware of that condition." *Elkins v. Hawkins Cnty.*, No. E2004-02184-COA-R3-CV, 2005 WL 1183150, at *4 (Tenn. Ct. App. May 19, 2005). Third, the plaintiff may show constructive notice by proving that "a pattern of conduct, recurring incident, or general continuing condition" caused the dangerous condition. *Blair*, 130 S.W.3d at 765-66. This is often called the "common occurrence" theory. All three methods of proving constructive notice are related to the defendant's superior knowledge of the premises. *McCormick*, 594 S.W.2d at 387. By showing actual or constructive notice, a plaintiff demonstrates that the owner had a duty to act reasonably under the circumstances and remedy the condition that caused injury to the plaintiff. *Blair*, 130 S.W.3d at 766.

Ms. Wright did not assert that the employees caused or created the condition or that Autozone's pattern of conduct caused the condition. Accordingly, her claim was based upon the premise that the condition existed for such a long period of time that the employees should have become aware of the condition. In its request for summary judgment, Autozone asserted that Ms. Wright could not establish that Autozone had constructive notice of the dangerous condition when there was no evidence concerning how the floor became wet or for what length of time the floor was wet prior to the fall. Autozone noted that its employees constantly monitored the area in which Ms. Wright fell and did not notice any water in that area, that there were warning signs in the area that she fell, and that after she fell, the employee who assisted her found a minuscule spot of water that could not have been seen from behind the counter. We agree with the trial court that Autozone's motion was properly supported, thereby shifting the burden to Ms. Wright to show that a genuine issue of material fact remained for trial. In response, Ms. Wright offered affidavits in which she and Ms. Palmore attested that the puddle was large enough to be seen and that the employee behind the counter could have seen the puddle. Ms. Wright attested that warning signs were not in the area, while Ms. Palmore attested that the puddle remained on the floor for approximately 15 to 20 minutes prior to the fall, that Ms. Wright was the only person who walked near the puddle during that time, and that Ms. Wright did not cause the puddle.

"In cases such as this where liability is based upon constructive knowledge of the dangerous or defective condition, there must be material evidence from which the trier of fact could conclude the condition existed for sufficient time and under such circumstances that one exercising reasonable care and diligence would have discovered the danger." *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973). In addition to considering the length of time that the condition existed, one must also consider "the nature of the business,

its size, the number of patrons, the nature of the danger, [and] its location along with the foreseeable consequences." *Id.*

In viewing this case in the light most favorable to Ms. Wright, we can find no proof in the record that could potentially establish that Autozone had constructive knowledge of the puddle that caused Ms. Wright to fall. Even taking into consideration the fact that the puddle was the size of a plant pot and that the employee could have seen the puddle from the counter, we do not believe that there is any evidence to infer that Autozone should have discovered the puddle's existence when Ms. Wright was the only person in the front of the store during the 15 to 20 minutes prior to the fall. While the employees were not tasked with patrolling the store for spills at set times, they had been instructed to clean any spills that they encountered. We do not believe that a lapse of approximately 20 minutes between general inspections was unreasonable when, according to Ms. Palmore, there was only one customer in the front of the store during that time period. Additionally, we cannot say that an employee would have discovered the puddle when Ms. Wright, who admitted that she was only a few steps away from the puddle when she first left the store, did not even notice the puddle in her successive trips in and out of the store. Without any additional evidence regarding the source of the puddle or the actual length of time that the puddle was present, we hold that there was not any material evidence from which the trier of fact could infer that the dangerous condition existed for such a length of time that one exercising reasonable care would have discovered it. Accordingly, we conclude that the trial court did not err in granting the motion for summary judgment.

2.

Autozone alternatively asserts that summary judgment was appropriate because Ms. Wright was 50 percent or more at fault for her accident when she was the only person in the area but still failed to see the dangerous condition. Ms. Wright responds that her comparative fault is not a proper issue before this court because the trial court did not base its opinion on her comparative fault. In the event of further appellate review, we acknowledge that the court's opinion was not based upon Ms. Wright's alleged comparative fault and hold that this is not a proper issue for our review. Specifically, the court's statement that it was "entirely possible, if not probable that the wet spots occurred because of Ms. Wright's entries and exits onto the premises" was insufficient to support a finding that Ms. Wright was at fault for her injuries. This statement was superfluous and should be discarded when the court was tasked with considering the evidence in the light most favorable to Ms. Wright, who, according to Ms. Palmore, did not cause the puddle. The remaining trial court findings support the court's ultimate conclusion that Ms. Wright failed to submit any material evidence that Autozone had constructive notice of the dangerous condition that caused her to fall.

B.

Ms. Wright contends that her statement of undisputed material facts should be deemed admitted because Autozone failed to respond to the statement. She asserts that Autozone should have responded to her statement even though Autozone "was not technically required" to respond. The rule at issue provides,

In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.

Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undispusted for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

If the non-moving party has asserted additional facts, the moving party *shall be allowed* to respond to these additional facts by filing a reply statement in the same manner and form as specified above.

Tenn. R. Civ. P. 56 (emphasis added). As can be discerned from the plain text of the rule, the moving party is allowed to respond to the non-moving party's statement of additional facts but is not required to issue a response. We decline to hold that a moving party's failure to issue a response deems the non-moving party's statement of facts admitted when the moving party is not required to issue a response. Moreover, the record does not reflect that this issue was raised in the trial court. A party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell*

*Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 466-67 (Tenn. Ct. App. 1984)).  Accordingly, this issue is without merit.

## V.  CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, David G. Rogers, ex. rel. Karen Wright.

_____
JOHN W. McCLARTY, JUDGE