**CAMPBELL COUNTY BOARD OF EDUCATION, Plaintiff-Appellee,**

v.

**BROWNLEE–KESTERSON, INC.; La-Follette Sheet Metal Co., Inc.; Goodstein, Hahn, Shorr & Associates; United States Fidelity and Guaranty Company; and The Celotex Corporation, Defendants-Appellants.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

March 8, 1984.

Rehearing Denied April 13, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 27, 1984.

Thomas D. Dossett, Kingsport and Franklin D. Dossett, LaFollette, for plaintiff-appellee.

W. Conway Garlington, Knoxville, for defendant-appellant Brownlee-Kesterson, Inc.

Hugh W. Morgan, Knoxville, for defendant-appellant LaFollette Sheet Metal, Inc.

L. Anderson Gaylon, III, Knoxville, for defendant-appellant Goodstein, Hahn, Shorr & Associates.

Jack B. Draper, Knoxville, for defendant-appellant United States Fidelity and Guaranty Co.

Dennis L. Babb and James C. Wright, Knoxville, for defendant-appellant The Celotex Corp.

NEARN, Presiding Judge, Western Section.

Campbell County School Board contracted to have a new school complex constructed. Dissatisfied with the results of the construction, Campbell County School Board filed suit against the architect, the general contractor and certain subcontractors charging them with breaches of contract in regard to the construction and sought judgment for the damages thereby sustained. After hearing all the proof the Chancellor entered judgment against defendants for varying amounts with joint and several liability to plaintiff and the defendants have appealed. United States Fidelity and Guaranty, the surety on the contractor's performance bond, was a party defendant to the litigation at the trial level and judgment was entered against the surety. However, that defendant has settled its differences with the plaintiff and is not a party to the appeal.

The Chancellor's opinion, finding of facts and conclusions of law describe the matter and the issues decided by him. After making his original findings and conclusions, he was asked to find additional facts—which he did. We think a better understanding of our treatment of the issues raised on appeal will be accomplished if we here copy the pertinent parts of the Chancellor's findings and conclusions. The Chancellor found as follows:

This case arose as a result of a high school building contract. The architect herein interviewed and received this contract for development of the project and proposed the standard AIA contract. A separate contract was awarded Black Oak Construction for site preparation. The contract for the entire project was approximately four and a quarter million dollars. The fee of the architect was approximately $250,-000.00.

Brownlee-Kesterson was the successful bidder for construction and subcontracted the roofing to LaFollette Sheet Metal. LaFollette Sheet Metal was required to provide a bond for a built up asphalt roof at the cost of the School Board. USF & G

provided LaFollette Sheet Metal's performance bond. Celotex Corporation sold materials for the roof to LaFollette, and provided a roof bond, agreeing to repair the roof for any problems caused by failure of materials or workmanship.

The issues in this case are generally as follows: One, did the architect violate his duty of disclosure and the various duties under the AIA contract in the handling of the solution to the athletic building cracking. Is the contractor liable for subsurface conditions. Two, is the roof defective in design and application and who is responsible and for what amount. Three, are the decorative brick panels defective in design and workmanship and who is responsible and for what amount. Four, who is responsible, if anyone, for the painting required on the inside of the building from moisture from roof leaks.

* * *

Findings of Fact and Conclusions of Law.

* * *

The plans and specifications prepared by the defendant architects for the roof and related, adjacent and supporting structures and materials were deficient, defective, inadequate and incomplete and did not conform to the applicable and acceptable standards of good architectural and engineering practice in the following particulars:

(a) The roof crickets were designed too small to properly move the water to the scupper drains;

(b) The expansion joints were omitted from the roof design; and

(c) The joints for the coping of the parapet walls were defectively designed in that they were not waterproof.

The foregoing are major design errors and omissions which seriously and adversely affect the strength, durability and function of the roof and appendages and proximately contributed to the failure of the roof and the entry of water into the building.

The architects did not endeavor to guard the plaintiff against defects and deficiencies in the work of the defendant, Brownlee-Kesterson, Inc., particularly in the areas of masonry work and the roofing work; and the architects failed to reject masonry and roofing work of the defendant contractor which they knew or should have known to be defective and deficient.

The defendant architects knew that the brick and masonry work of the project did not conform to the plans and specifications nor to the acceptable standards of workmanship and not only wrongfully failed to reject said work but approved same and falsely advised plaintiff that the work had been properly and corrected [sic] executed.

In the summer of 1977, the architects wrongfully recommended to the owner that final payment be made for the roofing work and that the total project be accepted as complete when the architects

(a) knew that the roof as designed and installed was defective and deficient and had failed;

(b) knew that the coping on the parapet walls was not installed in accordance with the plans and specifications;

(c) knew or should have known that the joints specified in the plans for the coping were defectively designed in that they were not waterproof;

(d) knew or should have known from their required site observations that brick panels were not recessed as required by the plans and specifications;

(e) knew that the void behind the brick panels had not been filled with mortar as required by the plans and specifications;

(f) knew that the masonry and brick work, particularly that portion in the brick panels, had neither been executed in accordance with the plans or specifications nor in a good and workmanlike manner.

The failure of the first athletic building was caused by an unstable subsurface condition where it was constructed, which condition was known both to the architects and the contractor, Brownlee-Kesterson, Inc. before the building was constructed.

The architects acted in disregard of the plaintiff's interest and in violation of the standards of good architectural practice at

the time of commencement of the construction of the first athletic building in ordering and directing the contractor to proceed with the construction of the building when the contractor objected to proceeding with the construction because of the unsatisfactory and unstable condition of the subsurface area where the footings were to be poured.

The architects acted contrary to the standards of good architectural practice and failed to exercise that degree of care, skill and judgment required of them under the circumstances and conditions prevailing in regard to the construction of the first athletic building when they

> (a) ordered construction of the athletic facility over the contractor's objections without requiring additional borings and tests;
>
> (b) failed to require borings and tests at each corner of the foundation of the proposed building as well as at interim points at line of foundation in all instances preceding the construction of the building;
>
> (c) misinterpreted the tests rendered and acted upon test results which were insufficient and inconsistent.

The architects acted in bad faith and in breach of their duties to the plaintiff when they failed to reveal to the plaintiff the truth and complete facts and circumstances regarding the construction of the first athletic building or facility and in failing to advise the plaintiff that pursuant to the applicable provisions of the contract documents, the contractor was responsible for additional expenses incurred by reason of subsurface conditions and by wrongfully and falsely advising the plaintiff that the reconstruction of the athletic facility would be accomplished at no additional cost to the plaintiff, and that the $40,000.00 utilized was the contractor's money when in fact it should have remained the property of the plaintiff; and further when they wrongfully and incorrectly advised the plaintiff that the failure of the first athletic building or facility was an unfortunate occurrence for which no one was to blame or legally responsible.

The brick panels in the peripheral walls of the building including the mortar fill designed and specified for the void behind same and the interior flashing thereof were to be structural and functional in purpose.

In order to correct the defects, deficiencies and omissions of the installation of the brick panels in the peripheral wall of the school building and to render said panels in conformity with the plans and specifications safe and sound, the panels must be removed and replaced in their entirety.

The cost of removing and replacing the brick panels is $166,129.00.

The total cost of removing and replacing the defective roof, removing and replacing the coping on the parapet walls, installing the required wood nailers and expansion joints and repairing (including reseeding) the damage to the grounds of the high school complex which will result from the mobilization and setting up to perform and performing the aforesaid work is $669,958.00. A summarized breakdown of the latter sum is as follows:

> (a) The cost of removing and replacing the defective roof with a comparable and functional roofing system is $548,074.00
>
> (b) The cost of removing and replacing the defective coping on the parapet walls is $51,884.00
>
> (c) The cost of installing the required wood nailers and expansion joints and for repairing (including reseeding) the damage to the grounds of the high school complex which will result from the mobilization and setting up to perform and performing the aforesaid work is $70,000.00

## THE APPEAL OF THE ARCHITECTS.

█ Counsel for appellant architects has submitted issues in three categories, *viz.* "Evidentiary issues," "Substantial issues" and "Pleading issues."

We first consider the pleading issues which are:

A. Whether the Court erred in allowing the plaintiff to amend its complaint to conform to the proof several months after the trial of the cause.

B. Whether the Court erred in making additional findings of fact as requested by counsel for the plaintiff in a hearing held several months after the trial of this cause in spite of the Court's statement in the memorandum opinion that future requests for findings of fact would be considered with "dissatisfaction" on the part of the Trial Court.

Rule 15.01, T.R.Civ.P. provides that amendments are to be freely given and may be made after proof to conform thereto. In *Branch v. Warren*, (1975 Tenn.) 527 S.W.2d 89, the late Justice Henry stated that the Rule meant exactly what it said. Also see *Douglass v. Rowland*, (1976 Tenn. App.W.S.) 540 S.W.2d 252, *cert. denied*. Although counsel for appellant now conjures up elements of possible prejudice arising out of the allowance of the amendment, after full examination of the record, we find no real prejudice and find the issue without merit. We are unable to find any reported case, and we are cited to none in the brief, that faults the Trial Judge for finding additional facts upon proper request. We do not intend to start such a line of cases.

Next we will consider the evidentiary issues which are:

A. Whether the Trial Court erred in admitting into evidence as against the appellant Goodstein the report of an expert consultant, John Garner, who was not called as a witness at trial.

B. Whether the Trial Court erred in admitting into evidence certain documents identified by counsel for plaintiff only as having been obtained from Goodstein files during the discovery process.

C. Whether the Court erred in allowing the admission of testimony tending to show conspiracy and/or collusion between the contractor and the architect as being outside the scope of the pleadings.

 The first issue deals with the introduction of a roofing expert's report into evidence. The issue on appeal is presented on the basis that Mr. Garner, the expert, did not testify at the trial. This was not the defendant's objection at trial. When the letter was offered at trial, the defendant objected that the letter, which was sent by the expert to the defendant's attorney, was protected by the work product rule. However, according to the argument of counsel, the letter was eventually obtained by the plaintiff's counsel with consent of the defendant. The defense counsel stated:

> I gave it [the letter] to Mr. Dossett [plaintiff's counsel] because he said he would give me consultant reports of his that he intended to use. I said, did I not, that I think I intended to call an expert witness, but I would let him have that report ... Tr. Vol. 1A p. 109.

The Trial Court correctly allowed the letter into evidence because the basis of the objection, work product rule, had clearly been waived by the defendant's voluntary relinquishment of the report to the plaintiff. Since the objection that the expert did not testify is raised only on appeal, it also has been waived.

 The issue dealing with the other document obtained through discovery of the defendant's files is also without merit. At trial, defendant objected to this evidence on the grounds of relevancy and that it was being introduced through the "wrong witness." It was clearly relevant and irrelevance is not argued on appeal. The argument on appeal is that it was introduced through the "wrong witness." Plaintiff counters that it was admissible as part of defendant Goodstein's discovery deposition. A deposition or *"any part"* of it, if admissible, may be used "as though the witness were then present and testifying." The deposition of an adverse party may be used "for any purpose." See T.R.Civ.P. 32.01. A deposition is testimony of a witness. One does not have to have a witness to introduce testimony of another witness. If the deposition is admissible it may be read to the trier of facts by counsel or may simply be handed to the Judge for his reading if the Judge happens to be the trier

of facts. There is simply no such thing as using the "wrong witness" to introduce that which is *per se* admissible.

■ The third evidentiary issue will not be considered. The appellant has failed to cite to the record, as required by T.R.A.P. 27(g), where such complained of evidence was admitted in over defendant's objection.

We now consider the "Substantive issues" which counsel lists as follows:

A. Whether the Trial Court erred in finding joint and several liability between and among all defendants in the litigation based on the replacement costs of a new roof for Campbell County High School.

B. Whether the Trial Court erred in failing to hold Celotex solely liable for any and all damages relating to the roof based on the issuance by Celotex and acceptance by the school board for Campbell County of the roofing guarantee.

C. Whether the Trial Court erred in its holding that Campbell County was entitled to damages for the complete replacement of ornamental brick panels as against Goodstein in the amount of $166,129.00.

D. Whether the Court erred in holding that the action by the Campbell County school board regarding the athletic facility was not barred by the four-year statute of limitations.

E. Whether the Trial Court erred in holding the appellants Goodstein liable for the total costs of removing and relocating the athletic facility, including the $40,000 portion represented by change order decreasing the discretionary fund and the contract amount.

F. Whether the Court erred in awarding damages for the removal and replacement of the metal coping on the parapet walls of the roof of the high school.

G. Whether the Court erred in ruling that Goodstein as the project architect had any responsibility for the failure of the general contractor to comply with the requirements of the plans and specifications.

H. Whether the Trial Court erred as the proper measure of damages awarded to the plaintiff for the roof, brick panels, and coping, i.e., the cost of total removal and replacement versus cost of repair.

Before considering these issues it should be noted that in its trial brief Goodstein admitted to the Trial Court "its liability for proven departures from the acceptable standard of architectural care, provided such departures are proven at trial, by a preponderance of expert testimony ..."

■ We will not consider issues A and B as stated by counsel for appellant. The architects did not file an action against anyone. They occupy the status of defendant only. Whether or not the Chancellor found other parties liable to plaintiff as well as Goodstein is of no concern to Goodstein. The issue, insofar as Goodstein is concerned, is whether or not the Chancellor erred when he found the architects liable to the plaintiffs. The liability of others is the problem of others and not Goodstein. See *Boggess v. Gamble*, (1866) 43 Tenn. (3 Cold.) 148.

■ Issue "D" has application only if the Trial Court erred in permitting plaintiff to amend the complaint before trial to include in the complaint damages for that referred to in the record as the "first athletic building." If the amendment was not properly allowed, the four year statute of limitations, as set forth in T.C.A. § 28-3-202, would have run against that claim. If the amendment were properly allowed, its filing date would relate back to the filing date of the complaint, pursuant to Rule 15.03, T.R.Civ.P., and would, therefore, be timely filed. In order to relate back the amended complaint should arise out of the same transaction set forth in the original complaint. *Karash v. Pigott*, (1975 Tenn.) 530 S.W.2d 775. The claim for damages arising out of the problems with the first athletic building is based on the same contract with the architects as is the basis for the original complaint. It was just one more aspect of the entire project. The amended claim therefore arises out of the "conduct, transaction or occurrence set

forth ... in the original pleading ..." and it "relates back to the date of the original pleading." T.R.Civ.P. 15.03. The issue is without merit.

The remaining issues, regardless of the language used to construct them, in their essence form but the single complaint that the evidence preponderates against the findings of the Chancellor as to the architects' liability or as to the amount thereof or to both. The Chancellor found the architects' liability to be in the amount of $898,982.72.

■ We have examined the record in light of the findings of the Chancellor heretofore set forth and we do not find that the evidence preponderates against his finding of facts. The Chancellor, as indicated by his findings, found the architects liable for their own failings and departure from acceptable architectural standards and not for the failings of others as is attempted to be argued in appellants' brief. Accordingly, we affirm the judgment as to liability and as to amount against appellant Goodstein, et al.

### THE APPEAL OF LAFOLLETTE SHEET METAL.

The Chancellor found LaFollette liable in the amount of $692,953.72 representing the cost of the replacement of the roof of $548,074.00 plus some interior damage, clean up and painting, replacing defective coping, damage to grounds and installing wood nailers and expansion joints.

Since this suit was filed, LaFollette has filed a petition in bankruptcy. The Federal Court has entered an order staying any execution on any judgment entered against the bankrupt. The Trustee in Bankruptcy now represents the interests of LaFollette.

Counsel for the Trustee raises the following issues on appeal:

1. LaFollette Sheet Metal, Inc. respectfully contends that the Court below erred when it failed to dismiss the action against it for damages for imperfect installation of the roof, on the grounds that the Celotex Corporation accepted full responsibility for the roof.

2. LaFollette Sheet Metal, Inc. respectfully contends that the Campbell County School Board waived any rights which it may have had against LaFollette Sheet Metal, Inc., for imperfect installation of the roof, when it accepted the building and disbursed the balance of the contract sum in October of 1977.

3. The evidence preponderates against the finding of the Trial Judge that the plaintiff is entitled to recover the sum of $51,884.00 for the removal of the metal coping on the parapet walls of the building.

4. The Court below erred in awarding plaintiff a judgment in the amount of $70,000.00 against LaFollette Sheet Metal, Inc. for the installation of wood nailers and expansion joints which the Court found would be necessary to render the roof functional and durable and for the repair (including re-seeding) of the damage to the grounds of the high school complex which will result from the mobilization and setting up to perform and performing the roofing and related work.

5. Does the evidence preponderate against the reasonableness of the amount of damages awarded against this defendant?

The entire argument set forth in the brief in support of the first issue is as follows:

It is respectfully insisted that responsibility for the roofing installation and the condition of the roof rests entirely with The Celotex Corporation. Celotex persuaded the architects to specify this roof, inspected the application of the roof through the job, accepted the installation, accepted the check for the roofing guarantee, and admits its responsibility for the condition of the roof.

■ It appears to us that the essence of that argument is the proposition that whenever the workmanship of the principal is guaranteed by another, the principal is thereby released. We know of no law in

support of that proposition and are cited to none. The issue is without merit.

■ There is no merit to the second issue. The roof contract calls for a guarantee of roof performance *after* completion.

■ The Chancellor found that the roof system needed to be replaced. Counsel for the trustee argues "Although the metal copings are formed with slightly incorrect angle on approximately one-third of the roof, the plaintiff has not established that the copings could or contributed to any leaks within the building or otherwise require replacement." We do not agree with that argument but we agree with the finding of the Chancellor. We also agree with the testimony of Donald Hubbard, of LaFollette, who testified that the roof was a total failure and that it leaked uncontrollably, partly at least due to the materials he used and the manner in which he applied them. The issue is found against appellant.

■ Issue number four is a subdivision, stated with particularity, of issue number five. Since we have concurred with the Chancellor in his finding that the roof structure must be replaced and that the defendant is liable for the cost of replacement it logically follows that defendant is liable for any damage done to the grounds or building necessarily required to replace the present roof structure. However, it does not follow that LaFollette should pay for or be liable for the shortcomings of the architects. The proof is clear, that no matter how the roof was designed, LaFollette did a sloppy, poor and totally unacceptable job in constructing the roof as designed. It is also clear that the architects failed to provide for wood nailers and expansion joints in the design plans. Since the design defect is the fault of the architect alone, we see no reason for others to pay for it. Accordingly, the liability of LaFollette must be decreased by an amount that represents the cost of the installation of wooden nailers and expansion joints. However, we have examined this record closely and are unable to find in its many volumes testimony regarding that amount. Accordingly, there will be a remand to ascertain that amount. Except as above noted the evidence does not preponderate against the amount of LaFollette liability. Execution of judgment ascertained on remand will be stayed pursuant to Federal Court orders.

THE APPEAL OF CELOTEX.

The issues on appeal raised by Celotex are:

1. That the court erred in its award of damages as to the roof and that the amount is excessive.

A. The damages are excessive in that no credit was allowed for the plaintiff's use and benefit of the roof.

B. The damages are excessive in that the court's basis for its damage award provides for a betterment.

2. That the court erred in holding the defendant Celotex liable for certain damages which under its contract it has no responsibility for.

■ We find no merit to the first issue. This was not a roof with minor leaks here and there for which some benefit to the owner might be considered as a reduction of damages. See *Bloomsburg Mills, Inc. v. Sordoni Construction Co.*, (1960) 401 Penn. 358, 164 A.2d 201. This roof was a total failure. Its residual benefit or value to an owner is about the same as that of an owner of the remains of a rubber balloon that has burst. It is valueless. Further, we find the damages awarded by the Chancellor for the replacement of the roof represent necessaries, not betterments.

By the second issue Celotex complains of the inclusion in the damage award for roof replacement of the cost of "roof insulation" for which, by the terms of its bond, Celotex excluded its liability.

■ This issue is without merit also. Celotex did not object at trial when proof of the value of the roof was being heard. They did not request, in their Joint Motion to Alter or Amend, that the Chancellor exclude that portion of the damages award-

ed against them that were attributable to the roofing insulation. It appears from the record that the first time this issue has been raised is on appeal, and it is therefore found against Celotex. See *Hohenberg Bros. Co. v. Missouri Pacific R.R.*, (1979 Tenn.App.W.S.) 586 S.W.2d 117.

## THE APPEAL OF BROWNLEE–KESTERSON, INC.

Appellant contractor lists five issues for our review. The first is that the Chancellor erred in finding it liable in any amount and the remaining four issues complain of specific items of liability, if the Court should find it liable in the first instance.

■ The contractor relies upon the owners' final payment under the contract as an acceptance of the job and a waiver of its rights against the contractor. The proof clearly shows both the architect and the contractor knew that the roof was a failure and could not be remedied; yet with this knowledge, which they failed to communicate to plaintiff, they induced the plaintiff to make a final payment on the contract. It is evident that the only reason such was done was in an attempt to set up some sort of sham defense for this very litigation, which they knew was bound to follow. Under these circumstances, the final payment under the contract does not constitute a waiver. In addition, under the terms of its contract, the contractor guaranteed the performance of the roof after acceptance.

■ Also, contractor relies upon the roof guarantee made by Celotex as some sort of release as to the contractor's liability. This contention has been previously found wanting in our treatment of the LaFollette appeal.

Therefore, the first issue is without merit and the contractor is liable.

■ We find the specific complaints as to particular items of liability, save two, without merit. The Chancellor cast in judgment the contractor and the architect for the same amount *viz.* $899.082.72. In that amount there is included an unknown amount for expansion joints and wood nailers, which we have previously held to be a responsibility of the architects only, because such amount represents a design defect. Therefore, the contractor is not liable for that presently unknown amount. Also included in the $899,082.72 is the sum of $40,000.00 that represents additional costs to the owner caused by the failure of the athletic building. Prior to the actual construction of the "first athletic building" the contractor on at least three occasions vociferously called to the atte..tion of the architect the inadequacy of the sub-soil upon which the building was to be constructed. At this point the architect was the agent of the owner. After the contractor had given for the third time his opinion of the inadequacy of the sub-soil, the architect told the contractor to "build it and shut up." Such instructions must be considered, insofar as the contractor is concerned, as having come directly from the owner. Therefore, the contractor cannot be charged for damages caused by the owners' ill-advised orders. Much has been said in the briefs about the fact that the $40,000.00 was paid from a "discretionary" fund provided for in the contract. It makes no difference where the $40,000.00 came from insofar as the contractor is concerned. The contractor is not legally responsible for that additional expenditure by the owner. The architects alone are responsible for that additional sum for it was their failure to live up to their contract with the owner that was the cause of that loss.

Therefore, the judgment against the contractor must be reduced by the sum of $40,000.00 and by a sum representing the cost of the wood nailers and expansion joints.

The result is that the cause must be remanded so as to determine the proper dollar liability of the defendants LaFollette and Brownlee-Kesterson in the manner hereinbefore set forth. The judgment against the architect in the amount of $898,982.72 is affirmed as well as the judgment against Celotex in the amount of $548,074.00. Execution of any judgment

against LaFollette will be stayed pending further orders from the Federal Court.

Costs of appeal are adjudged equally among the appellants.

Done at Knoxville in the two hundred and eighth year of our Independence and in the one hundred and eighty-ninth year of our Statehood.

TOMLIN and HIGHERS, JJ., concur.

ORDER ON PETITION TO REHEAR

The petition to rehear of Goodstein, Hahn, Shorr & Associates is denied.

Entered April 13, 1984

/s/ Nearn
NEARN, P.J., W.S.
/s/ Tomlin
TOMLIN, J.
/s/ Highers
HIGHERS, J.