# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 10, 2012 Session

## KIMBERLIE EDMONSON v. JEREMY JAMES McCOSH, ET. AL.

### Appeal from the Chancery Court for McMinn County
### No. 23964    Hon. Jerri S. Bryant, Chancellor

---

### No. E2010-01588-COA-R3-CV-FILED-SEPTEMBER 6, 2012

---

In this case, the child at issue was declared dependent and neglected and was placed in grandmother's custody following the child's removal from mother. Months later, father petitioned for custody of the child. The court granted father's petition and awarded grandmother reasonable visitation. Thereafter, father filed a petition to terminate mother's parental rights. Mother objected and sought custody or visitation, while grandmother asked the court to either reinforce her court-ordered visitation or grant joint custody. The court denied the petition to terminate mother's parental rights, transferred grandmother's court-ordered visitation to mother, and advised grandmother that she would enjoy visitation as designated by the parents. Grandmother appeals. We affirm the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined and CHARLES D. SUSANO, JR., J., concurred filing a separate concurring opinion.

Kimberlie Edmonson, Athens, Tennessee, Pro Se.

Shannon M. Holland, Knoxville, Tennessee, for the appellees, Jeremy James McCosh and Robin Katheryn McCosh.

Sally C. Love, Cleveland, Tennessee, for the appellee, Mary Elizabeth Edmonson.

**OPINION**

## I. BACKGROUND

The Child at issue was born to Mary Elizabeth Edmonson ("Mother") on June 7, 2002. Mother never married the Child's father, Jeremy James McCosh ("Father"). Mother and Kimberlie Edmonson ("Grandmother") cared for the Child, while Father was absent from the Child's life for several years. In October 2004, Grandmother was granted custody of the Child, following Mother's agreement that it was in the best interest of the Child that custody be transferred to Grandmother. Five months later, Father petitioned the court for custody of the Child after learning that the Child was no longer in Mother's custody. Grandmother and Mother objected to the petition, arguing that Father was aware of the custody arrangement and that Father had failed to support the Child and had not established a bond with the Child. Mother asked the court to either return custody to her or award joint custody to her and Grandmother. A hearing was held at which Mother, Father, and Grandmother were present; however, Mother left during the hearing and did not return. Following the hearing, the court found that the Child would not be placed in a substantial risk of harm if placed with Father and transferred custody of the Child from Grandmother to Father in an order filed on July 25, 2006. The court also ordered Father to submit to a drug test, ordered Mother to pay child support, and awarded Grandmother visitation with the Child every other weekend. This order was not appealed from.

Approximately one and a half years later, Father filed a petition to terminate Mother's parental rights so that his wife, Robin Katheryn McCosh ("Stepmother"), could adopt the Child. Mother and Grandmother were named in the petition in which Father alleged that Mother had abandoned the Child by failing to remit child support and that it was in the best interest of the Child to terminate Mother's parental rights and proceed with Stepmother's adoption of the Child. Mother filed a counter-petition, requesting primary residential custody of the Child or joint co-parenting time with the Child. Grandmother responded to the petition to terminate Mother's parental rights by asserting that Father had failed to comply with court-ordered visitation and had been investigated for harming the Child.

Grandmother also filed several motions following the filing of the termination petition. In her first motion, Grandmother sought to enforce her previously ordered visitation with the Child and alleged that Father had refused to release the Child for the court-ordered visitation on four occasions. In her second motion, Grandmother alleged that Father continued to refuse to comply with the court-ordered visitation. In her third motion, Grandmother requested joint custody of the Child and alleged that Father remained in violation of his court-ordered visitation and had refused to submit to a hair follicle test.

A hearing was held over the course of two days regarding the petition to terminate Mother's parental rights. Following the hearing, the court found that Mother had not abandoned the Child and dismissed the petition to terminate Mother's parental rights on February 10, 2009. The court upheld Grandmother's court-ordered visitation but withheld ruling on Mother's counter-petition and alternative request for shared parenting time. The court also did not rule on Grandmother's three motions. Prior to the second hearing, Grandmother filed an amendment to her request for the enforcement of the court-ordered visitation in which she alleged that Father refused to comply with the court-ordered visitation even after the order was upheld in the court's ruling denying the petition to terminate Mother's parental rights.[1]

A hearing was held over the course of two days regarding Grandmother's pending motions and Mother's counter-petition for custody or visitation. Relative to Grandmother, the court found that she had become the "de facto psychological parent" of the Child because Mother and Father failed to care for the Child for the first four years of the Child's life. The court acknowledged Grandmother's significant bond with the Child but asserted that Father had been the primary residential parent of the Child since June 2006 and that the time had come for Mother "to take on the duties of parent to the [C]hild from [Grandmother]." The court held that it was in the best interest of the Child for Grandmother to "take on the role of a traditional grandparent in the [C]hild's life, rather than a parental role" and awarded joint co-parenting time to Mother. The court stated,

> It is appropriate and in the best interest[] of the [C]hild that he continue to reside primarily with [Father], and that [Mother] exercise co-parenting time [], free from involvement and interference of [Grandmother] or [F]ather.

Relative to future visitation between Grandmother and the Child, the court stated,

> [Grandmother's] visitation with the [C]hild shall continue as set forth herein until May 1, 2010. After [that time], [Grandmother's] independent visitation time shall cease and she shall have no right to continuing independent visitation. [Grandmother's] visitation shall occur at the discretion of [Mother] and [Father], and during co-parenting time, if any.

The court then set forth a detailed visitation schedule that allowed for Grandmother's continued visitation with the Child until May 2010. This order was filed on June 18, 2010. It is from this order that Grandmother appeals.

---

[1]Grandmother also filed other motions that are not relevant to this appeal.

## II.  ISSUES

Grandmother raises a myriad of issues on appeal that we consolidate and restate as follows:

> A.  Whether Grandmother was entitled to an attorney at trial or on appeal.
>
> B.  Whether the court erred in denying Grandmother's request for the transcript of the proceedings at no cost to her.
>
> C.  Whether the court erred in granting custody to Father.
>
> D.  Whether the court erred in suspending Grandmother's visitation.

Father also raises an issue on appeal for our consideration that we consolidate and restate as follows:

> E.  Whether Father is entitled to attorney fees and costs on appeal.

## III.  STANDARD OF REVIEW

The record before this court does not contain a transcript or an approved statement of the evidence.  It is the appellant's burden to prepare a record that "'conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal.'"  *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997) (quoting *State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992)).  Without a transcript or sufficient statement of the evidence, appellate courts must assume that "there was sufficient evidence before the trial court to support its judgment." *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007) (citing *McKinney v. Educator & Exec. Insurers, Inc.*, 569 S.W.2d 829, 832 (Tenn. Ct. App. 1977)).  Accordingly, this court's review will be limited to those issues for which an adequate legal record has been preserved, namely whether there was an error of law based upon the technical record before this court. *Taylor v. Allstate Ins. Co.*, 158 S.W.3d 929, 931-32 (Tenn. Ct. App. 2004).  Nevertheless, we will address each issue presented, in turn, and determine whether the record is sufficient for our review.

## IV.  DISCUSSION

As a threshold issue, we must address the fact that there are a multitude of problems with Grandmother's brief.  She failed to comply with the majority of the requirements

contained in Rule 27(a) of the Tennessee Rules of Appellate Procedure and presented a rambling and, at times, incoherent brief. Furthermore, by not providing any relevant citations to the record, Grandmother has failed to comply with Rule 6 of the Tennessee Court of Appeals which states in part:

> (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. Ct. App. 6(b). Failure to comply with these rules may result in waiver of the issues presented for review by this court. *Bean v. Bean*, 40 S.W.3d 52, 54-55 (Tenn. Ct. App. 2000). We believe that these shortcomings in the brief are due, in part, to Grandmother's status as a pro se litigant. This court "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995)). However, "[t]he courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs." *Id.* Accordingly, we will proceed with our review of the issues presented on appeal.

A.

Grandmother argues that as the de facto parent of the Child with ongoing visitation rights, the trial court should have appointed an attorney to represent her in the proceedings at trial. During oral argument, Grandmother also requested an attorney to represent her on appeal. Father and Stepmother respond that the record does not reflect that Grandmother ever requested an attorney at trial and that Grandmother cannot establish that she was entitled to an attorney at trial. They assert that she is also not entitled to an attorney on appeal.

The record is devoid of any proof that Grandmother requested an attorney at trial. A party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457, 467 (Tenn. Ct. App. 1984)). If Grandmother had requested an attorney, the trial court could have ruled upon the issue and provided a record for this court's review. Regardless of any potential waiver, Grandmother was not entitled to an attorney at trial regarding the matters she has appealed.

Generally, "[i]ndigent civil litigants, unlike indigent criminal litigants, possess neither the constitutional nor the statutory right to court-appointed legal assistance." *Bell v. Todd*, 206 S.W.3d 86, 92 (Tenn. Ct. App. 2005) (citing *Hessmer v. Miranda*, 138 S.W.3d 241, 245 (Tenn. Ct. App. 2003); *Coakley v. Daniels*, 840 S.W.2d 367, 372 (Tenn. Ct. App. 1992); *Lyon v. Lyon*, 765 S.W.2d 759, 763 (Tenn. Ct. App. 1988)). However, "Tennessee Supreme Court Rule 13 requires the trial court to 'advise any party without counsel' of his [or her] right to counsel and to appoint such counsel [to indigent parties] upon request in any case 'involving allegations against parents that could result in finding a child dependent or neglected or in terminating parental rights.'" *State v. Mims*, 285 S.W.3d 435, 450 (Tenn. Ct. App. 2008) (quoting Tenn. Sup. Ct. 13 § 1(d)(2)(B)). While the wording of Rule 13 indicates that Grandmother *may* have had a statutory right to an attorney during the termination proceeding,[2] the court bifurcated the proceedings and held a separate hearing to consider Grandmother's motions that are the subject of this appeal. Any *potential* error regarding the court's *alleged* failure to advise Grandmother of her *possible* statutory right to an attorney during the termination proceeding was cured by the dismissal of the termination petition. Moreover, Grandmother was not entitled to an attorney at the separate hearing regarding her motions for visitation or joint custody and the record does not indicate that she ever requested an attorney. Grandmother is also not entitled to the appointment of an attorney on appeal. Indeed, her appeal is civil in nature and does not involve the termination of parental rights or a finding of dependency and neglect. *See generally* Tenn. Sup. Ct. 13. Accordingly, we deny Grandmother's motion for the appointment of an attorney on appeal and conclude that the trial court did not err in failing to appoint an attorney at trial.

B.

Grandmother asserts that the trial court erred in denying her request for a transcript of the evidence at no cost to her. She contends that she was constitutionally entitled to a transcript of the evidence and any other documents needed for her appeal. Father and Stepmother respond that the court was not required to provide the requested documentation when Grandmother was unwilling to pay for them as required.

As previously mentioned, it was Grandmother's burden to prepare a record that "conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal." *Nickas*, 954 S.W.2d at 742 (quoting *Boling*, 840 S.W.2d at 951). Rule 24(b) of the Tennessee Rules of Civil Procedure

---

[2]The provision provides that in a dependency and neglect or termination proceeding, "*any* party without counsel" should be advised of the "right to be represented throughout the case by counsel and that counsel will be appointed if the party is indigent and . . . requests appointment of counsel." Tenn. Sup. Ct. 13 § 1(d)(2)(B) (emphasis added).

provides that appellants should submit a transcript of the proceedings, if necessary to convey a "fair, accurate and complete account of what transpired." However, in termination proceedings, the court may be required to furnish a transcript for an indigent parent appealing the termination of that parent's parental rights. *M.L.B. v. S.L.J.*, 519 U.S. 102, 128 (1996) (holding that the court may not withhold a record of sufficient completeness from indigent parents who appeal the termination of parental rights); *see also In re J.M.C.H.*, No. M2002-01097-COA-R3-JV, 2002 WL 31662347, at *4 (Tenn. Ct. App. Nov. 26, 2002) (providing that an indigent parent was entitled to "the availability of a record of trial evidence and events which is sufficiently complete to allow an appellate court to review the evidence in accordance with applicable standards" when her parental rights had been terminated and a transcript or statement of the evidence was not available). The proceeding at issue did not involve the termination of parental rights because the court denied the termination petition, leaving the motions for visitation and joint custody to be determined at a later date. Additionally, if a party cannot afford to pay for a transcript of the proceedings, the Tennessee Rules of Appellate Procedure allow appellants to present a statement of the evidence in lieu of a transcript. *See* Tenn. R. App. P. 24(c). While Grandmother presented a statement of the evidence, that statement was rejected because it did not "convey a fair, accurate and complete account of what transpired." *Id.* Under these circumstances, we conclude that Grandmother was not entitled to a transcript of the proceedings and other documents relevant to the appeal at no cost to her.

C.

Grandmother asserts that the trial court erred in transferring custody of the Child to Father. Father and Stepmother respond that this issue is not properly before this court because Grandmother never appealed the court's grant of custody to Father. The order granting Father custody of the Child was filed on July 25, 2006. Grandmother did not appeal that order but only filed a motion for visitation in 2008 after Father refused to deliver the Child for Grandmother's court-ordered visitation. "As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a) and (c); *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)). This issue is not properly before this court because Grandmother never appealed the initial custody determination.

D.

Grandmother asserts that the court erred in denying her request to continue the court-ordered visitation when she had an established relationship with the Child as the Child's de facto parent. She claims that Father erroneously interfered with the Child's right to maintain

a relationship with her. She believes that the interference with that relationship was a violation of her constitutional rights and the Child's constitutional rights and asks this court to reinstate the visitation order. She alleges that she was "not permitted to argue violation of due process of law or be heard in regards to liberty interest on behalf of the [C]hild." Father and Stepmother respond that the court's decision to defer visitation determinations to the parents was within the court's discretion.

A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the Federal and State constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-579 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). While this right is fundamental, it is not absolute. *State v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). It continues without interruption only so long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002); *In re S.M.*, 149 S.W.3d 632, 638-39 (Tenn. Ct. App. 2004); *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). Grandmother appears to argue that as the de facto parent of the Child, she enjoyed the same constitutional rights to parent the Child as the biological parents. While it is true that Grandmother parented the Child and was ultimately granted custody of the Child for a number of years, Mother and Father's parental rights were never terminated. Thus, Grandmother enjoyed the custodial rights to the Child for a period of time but never possessed any constitutional rights to the Child. When the Child was returned to Father, her rights were limited to those transcribed in the grandparent visitation statutes. *See* Tenn. Code Ann. § 36-6-306.

In suspending Grandmother's visitation with the Child, the court effectively modified the visitation order. Our review of the modification of a visitation order is "governed by an abuse of discretion standard, with the child's welfare given paramount consideration." *Smallwood v. Mann*, 205 S.W.3d 358, 361 (Tenn. 2006) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). In reaching its decision to suspend Grandmother's visitation, the court stated that it relied upon the testimony from the parties, the arguments of counsel and Grandmother, and the pleadings before the court. As previously mentioned, the record contains neither a transcript of the hearing nor a statement of the evidence. Without a proper record to review all of the evidence before the court, we must conclude that the court did not abuse its discretion in modifying Grandmother's court-ordered visitation. "It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the trial court to support its judgment[.]" *Thomas*, 249 S.W.3d at 377 (citing *McKinney*, 569 S.W.2d at 832). Additionally, we must also reject Grandmother's contention that the trial court did not permit her to present arguments regarding the alleged interference with her liberty rights and the

alleged denial of due process. Again, without a proper transcript, we cannot review this issue.

E.

Father asserts that Grandmother's appeal was frivolous and that he is entitled to damages in the form of attorney fees and costs for having to defend against the appeal. Tennessee Code Annotated section 27-1-122 provides for an award of damages, including attorney fees, when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny Father's request for attorney fees on appeal because we do not believe the appeal was wholly without merit and lacking in justiciable issues.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Kimberlie Edmonson.

_____
JOHN W. McCLARTY, JUDGE