# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 2, 2016

## BETTY KIRBY v. SUMNER REGIONAL MEDICAL CENTER

**Appeal from the Circuit Court for Sumner County**
**No. 83CC1-2014-CV-680     Joe Thompson, Judge**

_____

**No. M2015-01181-COA-R3-CV – Filed July 12, 2016**

_____

This is a health care liability action.[1]  The plaintiff suffered permanent damage after receiving medical treatment from the defendant hospital.  The plaintiff filed suit exactly one year after her hospital stay.  The defendant hospital moved to dismiss, arguing that the plaintiff failed to comply with the pre-suit notice and good faith requirements applicable to health care liability actions.  The plaintiff later argued that the failure to comply with the necessary requirements should be excused for extraordinary cause as evidenced by the passing of her legal counsel's son four days prior to the filing of the complaint.  The trial court granted summary judgment, finding that no extraordinary cause existed.  The plaintiff appeals.  We reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, P.J. and KENNY ARMSTRONG, J., joined.

Daniel Marshall, Nashville, Tennessee, for the appellant, Betty Kirby.

Christopher A. Vrettos, Nashville, Tennessee, for the appellee, Sumner Regional Medical Center.

---

[1] Tennessee Code Annotated section 29-26-101 now defines most cases occurring in a medical context as "health care liability actions."  The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based."  *See* Acts 2011, ch. 510, § 8.  Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code.  *See* Acts 2012, ch. 798.  The provisions of the revised statute apply to this action.

## OPINION

## I.    BACKGROUND

On June 24, 2014, Betty Kirby ("Plaintiff") filed a health care liability complaint with an attached certificate of good faith against Sumner Regional Medical Center ("Defendant" or "Sumner Regional") based upon the care and treatment she received at Sumner Regional from June 23, 2013, through June 29, 2013.  Defendant sought dismissal of the lawsuit for failure to comply with the pre-suit notice and good faith requirements applicable to health care liability actions.  Specifically, Defendant argued that Plaintiff failed to provide pre-suit notice, that the complaint did not indicate that pre-suit notice had been provided or contain supporting documentation indicating the same, and that the certificate of good faith was deficient because it did not disclose whether counsel had previously violated the statute.  In support of the motion, Defendant attached an affidavit in which Karen Hanrahan, the Risk Manager for Sumner Regional, attested:

> At no time at least 60 days prior to the filing of the [c]omplaint did [Plaintiff] provide [Defendant] any written correspondence regarding potential legal action, by either certified mail or personal delivery, which included a list of potential defendants or a HIPAA compliant medical authorization.

Ms. Hanrahan further attested that the only document that could serve as pre-suit notice, a letter sent by facsimile and dated January 31, 2014, did not "inform [Defendant] that it was to be the sole [d]efendant in a potential health care liability action" and did not include "a list of other potential defendants or a HIPAA compliant medical authorization."

Plaintiff responded by asserting that dismissal was inappropriate because Defendants were aware of the potential for litigation several months before the complaint was filed.  Attached to Plaintiff's response was a notice of intent letter and a HIPAA compliant medical authorization.  Plaintiff requested a stay of the proceedings for 120 days to allow Defendant adequate time to investigate and respond to the complaint.  At the hearing, Plaintiff argued that dismissal for failure to disclose whether counsel had violated the good faith statute was unwarranted because counsel had never violated the statute.[2]  Plaintiff asserted that she and her family provided Defendant with a HIPAA

---

[2] During the pendency of this case, the Supreme Court held "that the requirement of Tennessee Code Annotated section 29-26-122(d)(4) that a certificate of good faith disclose the number of prior violations of the statute does not require disclosure of the *absence* of any prior violations of the statute." *Davis v. Ibach*, 465 S.W.3d 570, 574 (Tenn. 2015), *overruling Vaughn v. Mountain States Health Alliance*, No. E2012-01042-COA-R3-CV, 2013 WL 817032 (Tenn. Ct. App. Mar. 5, 2013).

compliant medical authorization and other information necessary to investigate her claim during the negotiation process. Following the hearing, the court directed the parties to submit proposed findings of fact and conclusions of law.

In lieu of submitting findings of fact and conclusions of law, Plaintiff filed a memorandum in opposition to the requested dismissal. In the memorandum, Plaintiff's counsel, Daniel Marshall ("Counsel"), provided as follows:

> First, [I] will address the issue of "extraordinary cause". [I] will also discuss below some of the alleged bases for [Defendant's] summary judgment motion but let's start first with the following important point. As shown in the attached death certificate, my infant son passed away about four days before I filed the [c]omplaint in this case. Understandably, I was extremely upset and not thinking clearly shortly after my son's death. Unable to take any time off from my solo practice, I went from courthouse to courthouse a couple of weeks thereafter in a somewhat zombie-like state. I am unable to give specifics regarding my thought process at the time of the filing of the [c]omplaint. I just [knew] the statute of limitations was approaching and it was on my list of deadlines to meet. For the few months my son lived, there were frequent periodic indications that each day could be his last, including a few serious hospitalizations. The filing of the [c]omplaint before sending Notices of Intent and otherwise complying with the statute was a result of the aforementioned illness and death.

Plaintiff argued that the failure to comply with the pre-suit notice and good faith requirements applicable to health care liability actions should be excused for extraordinary cause. She alternatively argued that dismissal was unnecessary when the court possessed the discretion to allow her to cure the deficiencies.

In light of the new argument, the court allowed Defendant time in which to respond. Defendant conceded that extraordinary cause existed to excuse any deficiencies in the complaint and the failure to comply with the good faith statute. Defendant maintained that dismissal was appropriate based upon the failure to provide adequate pre-suit notice because "the birth, illness, and death of [Counsel's] son all occurred well after service of the defective pre-suit notice." Defendant noted that Counsel's son was born on March 6, 2014, 34 days *after* the January 2014 correspondence.

Thereafter, the court dismissed the suit without prejudice, finding "that no extraordinary cause exists pursuant to [Tennessee Code Annotated section] 29-26-121(b) for Plaintiff's failure to timely file pre-suit notice." This timely appeal followed.

## II.  ISSUE

We consolidate the issues raised by the parties into the following single and dispositive issue:  Whether the trial court abused its discretion by failing to excuse compliance with the pre-suit notice requirements applicable to health care liability actions pursuant to Tennessee Code Annotated section 29-26-121(b).

## III.  STANDARD OF REVIEW

The Tennessee Supreme Court has held that the proper way to challenge a plaintiff's compliance with the health care liability requirements is through a Tenn. R. Civ. P. 12.02(6) motion to dismiss.  *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).  "Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so."  *Id.*  In this case, documents outside the pleadings were attached to the motion to dismiss, thereby converting the motion into one for summary judgment.  The appropriate summary judgment standard to be applied is as follows:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).[3]  "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness."  *Id.* at 250 (citations omitted).

---

[3] We believe the standard set forth in *Rye* is controlling and must be applied retrospectively, despite the legislature's codification of Tennessee Code Annotated section 20-16-101, a similar, if not identical standard which provides as follows:

> [T]he moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> > (1)     Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> >
> > (2)     Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

"The question of whether [a plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings." *Myers*, 382 S.W.3d at 307-08 (citing *Starr v. Hill*, 353 S.W.3d 478, 481-82 (Tenn. 2011)). This court reviews a "trial court's decision to excuse compliance under an abuse of discretion standard." *Id.* at 308. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV.  DISCUSSION

The Tennessee Civil Justice Act of 2011 ("the Act") established notice requirements applicable to all health care liability actions that accrue on or after October 1, 2011. The Act provides, in pertinent part, as follows:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

(A)  The full name and date of birth of the patient whose treatment is at issue;

(B)  The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C)  The name and address of the attorney sending the notice, if applicable;

(D)  A list of the name and address of all providers being sent a notice; and

> (E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.
>
> (3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:
>
> > (A) Personal delivery of the notice to the health care provider or an identified individual whose job function includes receptionist for deliveries to the provider or for arrival of the provider's patients at the provider's current practice location. Delivery must be established by an affidavit stating that the notice was personally delivered and the identity of the individual to whom the notice was delivered; or
> >
> > (B) Mailing of the notice[.]

Tenn. Code Ann. § 29-26-121(a). The legislature has established in the Act that absent a showing of extraordinary cause by a plaintiff, a court does not have the discretion to excuse compliance if a complaint is filed that fails to meet the requirements of Tennessee Code Annotated section 29-26-121. Tenn. Code Ann. § 29-26-121(b).

Plaintiff concedes that she did not file adequate pre-suit notice pursuant to section 29-26-121. Instead, she argues that the court abused its discretion in refusing to excuse compliance based upon the claim of extraordinary cause. She asserts that extraordinary cause existed based upon Counsel's wife's complications during pregnancy and his infant son's illness and ultimate death. Defendant responds that any claim of extraordinary cause pertaining to the period before the birth of Counsel's son should be disregarded because such claims were not presented for the court's consideration. We agree. To the extent Plaintiff argues that extraordinary cause existed prior to the birth of the child on March 6, 2014, this argument is waived. A party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell Cnty. Bd. of Educ. v. Brownlee–Kesterson, Inc.*, 677 S.W.2d 457, 466-67 (Tenn. Ct. App. 1984)). "The jurisprudential restriction against permitting parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver." *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citations omitted).

Thus, at issue in this appeal is whether the court abused its discretion by failing to excuse compliance based upon the following claim of extraordinary cause:

> For the few months my son lived, there were frequent periodic indications that each day could be his last, including a few serious hospitalizations. The filing of the [c]omplaint before sending Notices of Intent and otherwise complying with the statute was a result of the aforementioned illness and death.

Citing *Hawkins v. Martin*, No. W2013-02102-COA-R3-CV, 2014 WL 2854256 (Tenn. Ct. App. June 23, 2014), Defendant asserts that the court did not abuse its discretion in refusing to excuse compliance when the birth, illness, and death of Counsel's son occurred after service of the defective pre-suit notice, dated January 31, 2014.

In *Hawkins*, the pre-suit notice provided to the defendant did not contain a HIPAA compliant medical authorization. 2014 WL 2854256, at *1. The defendant sought dismissal, and counsel for the plaintiff argued that extraordinary cause existed to excuse compliance with the notice provision as evidenced by his impending deployment to Afghanistan for military service. *Id.* at *2-3. This court upheld the trial court's dismissal of the suit, holding that the evidence reflected that counsel received his notice of deployment *after* the defective pre-suit notice had been filed. *Id.* at *8-9.

The facts presented in *Hawkins* are inapposite to the facts presented in this case. Here, a careful review of the January 2014 correspondence reveals that Plaintiff never provided pre-suit notice. The letter, in its entirety, provided as follows:

> I represent [Plaintiff] and her children regarding their concerns about [Plaintiff's] treatment at [Sumner Regional]. This letter is an attempt to satisfactorily resolve this matter *without* the need for litigation.

> In summary, the gravamen of [Plaintiff's] complaint is that the medical professionals employed by Sumner Regional failed to show enough attention to [Plaintiff] to note and adequately treat the urinary retention issues from which she was suffering during her stay. Sumner Regional's failure in this regard is the direct and proximate cause of [Plaintiff's] inability to urinate on her own. Said inability and the mechanisms she now has to use to void her bladder have caused a significant diminution in her quality of life.

> The distention around her abdomen area was obvious by sight and palpitation to those of her children who visited/assisted her frequently at

your facility and it would have been obvious to any of your staff who heeded the concerns they voiced to Sumner Regional medical professionals. Yet, she was bloused with a significant volume of intravenous fluids, thus causing more distention/discomfort due to her inability to release the fluids. The end result is that she is now permanently dependent upon a Foley catheter.

An honest/thorough review of your institution's records and interviews of her daughter . . . will reveal to you Sumner Regional's negligence in this matter. It is the family's feeling that your Risk Manager Ms. Hanrahan chose not to take the above-described matter seriously. This why I am reaching out to you in an attempt to resolve this *before* revealing the details to other entities and filing suit.

(Emphasis added.). Plaintiff was not required to file pre-suit notice until June 24, 2014, four days after the death of Counsel's infant son. *See* Tenn. Code Ann. § 29-26-121(a)(3) (providing that pre-suit notice must be filed within the statute of limitations); *see also* Tenn. Code Ann. § 29-26-121(c) (extending the statute of limitations by 120 days once pre-suit notice is provided).

Our Supreme Court has provided the following guidance in determining the validity of a claim of extraordinary cause:

The statute does not define extraordinary cause, and the statute's legislative history does not indicate that the legislature intended to assign a meaning to that phrase other than its plain and ordinary meaning. Extraordinary is commonly defined as going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable. One legal scholar, commenting on Tennessee Code Annotated sections 29-26-121 and 122, has noted that possible examples of extraordinary cause might include illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary.

*Myers*, 382 S.W.3d at 310-11 (internal citations and quotations omitted). Here, Counsel explained that his son, born on March 6, 2014, experienced frequent periods of hospitalization before finally passing on June 20, 2014. We acknowledge Counsel's difficulty in maintaining his practice during the short life of his son and in the days following the child's passing. With the above considerations in mind, we conclude that the trial court's refusal to excuse compliance was not within a range of acceptable

alternatives given the applicable legal principles and the evidence presented.  We reverse the judgment of the trial court.

## V.    CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for further proceedings.  Costs of the appeal are taxed to the appellee, Sumner Regional Medical Center.

_____
JOHN W. McCLARTY, JUDGE